Chad C. Rasmussen (13847)
2230 N. Univ. Pkwy., Ste. 7E
Provo, UT 84604
Phone: 801-747-9529
Fax: 801-384-0519
E-mail: chad@AlpinaLegal.com

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION
**351 South West Temple, Salt Lake City, UT 84101 - (801) 524-6100**

| | |
|---|---|
| FRANCISCO RODRIGUEZ, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CASCADE COLLECTIONS LLC, <br><br> Defendant. | **DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** <br><br> Case No. 2:20-CV-00120-JNP-DBP <br><br> Judge: JILL N. PARRISH <br> Magistrate Judge: DUSTIN B. PEAD |

Defendant, by and through counsel Chad C. Rasmussen of Alpina Legal, pursuant to Dist. Utah Local Rules 7-1 and 56-1 and Rules 7, 12, and 56 Fed. R. Civ. P., moves this Court for an order dismissing this case or, alternatively, entry of judgment in its favor and dismissing this case with prejudice. This Motion is based upon the following grounds:

## INTRODUCTION AND RELIEF SOUGHT

Pursuant to Rules 7-1(a)(1)(A) and 56-1(b)(1) DUCivR, Defendant provides the following statement of the precise relief sought and the specific grounds for this Motion. Defendant is bringing this Motion to dispose of this case. Under Rule 12 Fed. R. Civ. P., this Motion is brought because Plaintiff does not have standing to bring this case and this Court lacks

subject matter jurisdiction, which requires this Court to dismiss this case. Alternatively, judgment should be entered in favor of Defendant as a matter of law. As alleged in the Complaint, this case is based solely upon the language included in a single letter that was sent to Plaintiff by Defendant. Defendant is also seeking to certify a class based on upon the same language that was sent in letters to members of the putative class. Plaintiff's only cause of action pleaded in the Complaint stems from the alleged violation of 11 U.S.C. § 1692g(a) of the Fair Debt Collection Practices Act ("FDCPA") because the language in the letter allegedly illegally limits the methods for Plaintiff to contact Defendant. Plaintiff's claim is based on a manifest hyper-technical procedural violation of the FDCPA. However, Plaintiff lacks standing, which precludes this Court from having subject matter jurisdiction over this case. This mandates that the Court dismiss this case. Alternatively, summary judgment is sought 1) ruling that this cause of action fails as a matter of law because there is no violation of the FDCPA, which means Plaintiff's claims fail and 2) even if a violation exists, then the bona fide error defense of 11 U.S.C. § 1692k(c) of the FDCPA results in no liability as a matter of law and, accordingly, this case should be dismissed with prejudice based on merits of the case after applying the law to the undisputed facts.

## STATEMENT OF RELEVANT AND UNDISPUTED MATERIAL FACTS

Pursuant to Rule 7-1(a)(1)(B) DUCivR, below are relevant facts related to the issue of subject matter jurisdiction. Pursuant to Rule 56-1(b)(3) DUCivR, Defendant also provides this concise statement of undisputed material facts that entitle it to judgment as a matter of law.

1. The letter ("Letter") that forms the only basis for the claims brought in this case was not attached to the Complaint.

2. The Letter was sent to Plaintiff by Defendant on or about April 26, 2019. *See* Complaint, ¶ 21.

3. Plaintiff's Complaint claims that the following language contained in the Letter is a violation of the FDCPA: "If you dispute the validity of this debt or any part of it, you must notify us either by writing to Cascade Collections, LLC, P.O. Box 970547, Orem, UT 84097, or by calling toll-free 855-978-7184 or locally (801) 900-3328 within thirty (30) days of the date of this letter; otherwise we will consider this debt to be valid and proceed accordingly." (Referred to hereafter as the "Language"). *See* Complaint, ¶ 26.

4. Plaintiff's Complaint does not allege that the Letter's statement of the Amount Due is violative of the FDCPA; in fact the Complaint is silent on anything related to any amount owing.

5. Plaintiff's Complaint does not allege that the Letter contradicts any relevant time periods in violation of the FDCPA; in fact the Complaint is silent on anything related to any time period.

6. After receiving the Letter, Plaintiff read the Letter. *See* Deposition of Plaintiff Francisco Rodriguez (attached to the Appendix filed herewith as Exhibit "B"), p. 64, LL. 16, 17; p. 68, LL. 3–9; p. 70, LL. 18–20.

7. Plaintiff's Complaint does not allege that he ever attempted to contact Defendant in order to dispute the debt, whether by telephone, in writing via the mail, or in any other way.

8. In fact, after receiving the Letter, Plaintiff called Defendant by calling the two numbers provided in the above Language. *See* Appendix - Exhibit "B," p. 35, LL. 3–9; p. 64, L. 23–p. 66, L. 7; p. 68, LL. 3–9; p. 70, L. 22.

9.  Plaintiff called Defendant because he wanted to prevent Defendant from garnishing his wages since Defendant had done that before and "caused [him] terrible hardships." *See* Appendix - Exhibit "B," p. 66, LL. 8–17.

10. When Plaintiff got the letter, the only thing he feared was getting his wages garnished by Defendant. *See* Appendix - Exhibit "B," p. 68, L. 10–p. 69, L. 5; p. 79, LL. 1–7.

11. Plaintiff did not fear that he would not be able to contact Defendant in a way other than provided in the Letter's Language, that he would run out of time to contact Defendant, or that he did not know what amount the alleged debt was for. *See* Appendix - Exhibit "B," p. 68, L. 10–p. 69, L. 5; p. 79, LL. 1–7.

12. Plaintiff never attempted to contact Defendant in any way other than by phone after receiving the Letter. *See* Appendix - Exhibit "B," p. 69, L. 13–p. 70, L. 9; p. 76, LL. 4–9.

13. Despite having read the Letter, Plaintiff believes that the Letter did not provide him a way to send something in writing to Defendant in order to dispute the debt. *See* Appendix - Exhibit "B," p. 69, L. 24–p. 70, L. 17.

14. Plaintiff believes that his claim is about there not being an adequate way to communicate with Defendant. *See* Appendix - Exhibit "B," p. 70, L. 23–p. 71, L. 23.

15. Plaintiff thinks an adequate way to contact Defendant includes an address to which to mail correspondence. *See* Appendix - Exhibit "B," p. 72, LL. 5–7; p. 74, L. 14–p. 75, L. 12.

16. The Language of the Letter provides an address to which to send a dispute to Defendant. *See* Letter (Doc. 16-4 or Doc. 17-3).

17. Despite having read the Letter, Plaintiff thought the PO Box provided in the Letter was

only for payments and not disputes even though the Letter said "If you dispute the validity… to send it there." *See* Appendix - Exhibit "B," p. 74, L. 24–p. 75, L. 9.

18. Plaintiff found out he had a claim a few months after he received the Letter after talking to his attorney. *See* Appendix - Exhibit "B," p. 72, L. 25–p. 73, L. 22.

19. Plaintiff has received letters from other debt collectors before. *See* Appendix - Exhibit "B," p. 66, LL. 10–14.

20. When Plaintiff tried to dispute debts from the letters received from other debt collectors he called them on the phone to do it. *See* Appendix - Exhibit "B," p. 76, L. 20–p. 78, L. 25.

21. Plaintiff "just think[s] it's easier to call on the phone and, you know, try to settle something over the phone than go in person" when trying to dispute a debt to a debt collector. *See* Appendix - Exhibit "B," p. 78, LL. 19–21.

22. Plaintiff has a tenth grade education. *See* Appendix - Exhibit "B," p. 9, LL. 11, 12.

23. Plaintiff fits the profile of a least-sophisticated consumer. *See* Appendix - Exhibit "B," p. 9, LL. 11, 12.

24. Plaintiff can read and write. *See* Appendix - Exhibit "B," p. 9, LL. 13, 14.

25. Plaintiff does not use facsimile much for himself. *See* Appendix - Exhibit "B," p. 16, L. 24–p. 17, L. 7.

26. Plaintiff cannot communicate via morse code, smoke signals, or sign language. *See* Appendix - Exhibit "B," p. 17, LL. 13–20.

27. Plaintiff cannot remember the last time he used facsimile for personal stuff. *See* Appendix - Exhibit "B," p. 16, L. 24–p. 17, L. 7.

28. Plaintiff cannot recall choosing to write something to someone instead of calling on the phone, but it would have been years ago. *See* Appendix - Exhibit "B," p. 19, L. 22–p. 20, L. 4.

29. Plaintiff cannot recall choosing to go talk to someone in person by getting in his car and driving to them instead of calling on the phone. *See* Appendix - Exhibit "B," p. 20, L. 5–10.

30. Plaintiff has not suffered any actual damages or injuries as a result of receiving the Letter. Plaintiff Francisco Rodriguez's amended Responses to Defendant Cascade Collections LLC's Discovery Requests, Set One (attached to the Appendix filed herewith as Exhibit "D"), Responses to Request for Admission Nos. 1 and 2.

31. Defendant had no intention of violating any provision of the FDCPA when it sent the Letter to Plaintiff. Declaration of Tucker Morris (attached to the Appendix filed herewith as Exhibit "A"), ¶ 24.

32. Since its inception, Defendant has used form letters that were drafted by its legal counsel. *See* Appendix - Exhibit "A," ¶ 18.

33. From its inception, Defendant has strived to be compliant with the FDCPA in all aspects of its collection attempts. *See* Appendix - Exhibit "A," ¶¶ 19–23.

34. Defendant's intention regarding the Language was to provide both written and oral ways Plaintiff could communicate with it. *See* Appendix - Exhibit "A," ¶¶ 25, 26.

35. Defendant believes it did not commit any errors or make any violations of the FDCPA, but if the FDCPA was violated, Defendant believes that it was due to an innocent mistake on its part in sending out the letter that included the language in question without

catching the allegedly offending language before sending the letter in the mail. *See* Appendix - Exhibit "A," ¶ 27.

36. If a violation of the FDCPA occurred, Defendant erred in its reliance upon its attorney and, through its then office manager Diana Tartaglia, erred in generating and sending a letter based upon a template that contained language that allegedly violated the FDCPA, wherein the semantics of the sentence informing account debtors how they may contact Defendant to dispute their debt is implicated. Defendant did not specify every single possible way that an account debtor could possibly try communicate with it, for example, via smoke signals or sign language, but Defendant has accepted and honored all forms of communications by account debtors, whether in writing and emails, via facsimile, through a website contact, or orally, that constituted a dispute and that were effectively received by Defendant. *See* Appendix - Exhibit "A," ¶¶ 27, 28.

37. Defendant has both written and unwritten procedures that it follows in order to avoid any mistakes that might result in a violation of the FDCPA and to make sure it complies with the FDCPA in creating form letters, generating letters based on those forms, and sending those letters to Account debtors. *See* Appendix - Exhibit "A," ¶ 30.

38. Defendant's procedures include the following:

   a. Defendant is not ignorant of the FDCPA and uses the services of an attorney to assist in providing templates for letters and other forms that require particular language or must comply with any particular law, including the FDCPA. The attorney keeps monitors changes to the law or procedure, especially those pertaining to the FDCPA, and will revise or update Defendant's forms when

prudent or advisable so as to not violate any law and to otherwise be in

compliance with applicable law, and he has done so in the past. *See* Appendix -

Exhibit "A," ¶ 31.

b.  Defendant relies upon the legal services of its attorney in examining the form

templates and in his revisions. *See* Appendix - Exhibit "A," ¶ 31.

c.  Defendant reviews changes made to documents by its attorney and only uses them

when it is believed that they are legally compliant. *See* Appendix - Exhibit "A," ¶

31.

d.  Defendant has written procedures that address the generation and use of form

letters, including the one in question. These procedures include "Account Import

Procedure: How to import accounts into Simplicity" and "Importing Accounts

from Creditors," both of which are attached hereto. *See* Appendix - Exhibit "A," ¶

31.

e.  These written procedures were in existence and in use at the time the letter was

sent to Plaintiff by Defendant's office manager. *See* Appendix - Exhibit "A," ¶ 31.

f.  These written procedures also address what to do when generating and sending

letters. Specifically, the "Account Import Procedure: How to import accounts into

Simplicity" procedure requires whoever is working the process to "Review the

printed dunning letters" and  the "Importing Accounts from Creditors," which was

created and used by Defendant's then office manager and who created and sent

the letter sent to Plaintiff, provides for whoever is working the process, after the

letter is created, to "Edit as necessary (make sure looks good to go)" and to follow

the additional procedure to "ensure prior to [mail]ing: (1) Acct. # looks correct, (2) balance due is correct (3) info looks correct." *See* Appendix - Exhibit "A," ¶ 31.

39. These are the procedures Defendant uses and feels are reasonably adapted to avoid making mistakes that might result in a violation of the FDCPA, including sending letters with language that might violate the FDCPA. *See* Appendix - Exhibit "A," ¶ 32.

40. Since its inception, Defendant has revised or otherwise modified the language of its form letter that is the subject of this lawsuit at least eight different times. These revisions were done for the primary purpose of attempting to make them compliant with the FDCPA. *See* Appendix - Exhibit "A," ¶ 33.

41. One prior instance of implementing these procedures includes one occasion where it was alleged that the language in a letter Defendant used violated the FDCPA based on the stated amount of the debt. At that time Defendant's attorrney investigated the claim, reviewed the all the language used in Defendant's form of the letter, and made revisions in the abundance of caution so as to avoid making possible errors in violation of the FDCPA. *See* Appendix - Exhibit "A," ¶ 34.

42. Within days of being served with process in this case, Defendant again amended the language in its form letters. *See* Appendix - Exhibit "A," ¶ 35.

## ARGUMENT

Pursuant to Rules 7-1(a)(1)(B) and 56-1(b)(4) DUCivR, Defendant provides the following argument and authority in support of this Motion:

### A. STANDARD

## Lack of Subject Matter Jurisdiction

Courts are required to dismiss a case under Rule 12(b)(1) if the they lack jurisdictional authority over the subject matter of the dispute. In all cases a plaintiff must have standing and a live "case or controversy" subject to the federal court's judicial power under Article III of the Constitution must exist. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3rd Cir. 2012); *Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Verifying its subject matter jurisdiction is this Court's "first duty." *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005); *see also Robey v. Shapiro, Marianos Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006). Consequently, challenges to subject matter jurisdiction may be raised at any time, by any party, or by the Court. *See Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). When a defendant challenges subject matter jurisdiction, the plaintiff must bear the burden of establishing jurisdiction. *See Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942).

## Summary Judgment

A motion for summary judgment should be granted if (1) there is no genuine dispute, (2) as to any material fact, and (3) the moving party is entitled to judgment. *See Beard v. Banks*, 548 U.S. 5211, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006). If a defendant is also moving for summary judgment based on an affirmative defense, "[t]he defendant ... must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir.1997) One observer has noted, "when properly employed, the motion operates to conserve the resources of the courts by eliminating trials that would serve no

purpose…" David A. Sonenschein, <u>State of Mind and Credibility in the Summary Judgment Context: A Better Approach</u>, 78 Nw. U. L. Rev. 774, 774 (1984). Inferences in favor of the nonmoving party should be weighed only after the court determines that a "clear choice of inference actually exists." *Euromotion, Inc. v. BMW of North America, Inc.*, 136 F.3d 866, 872–73 (1st Cir. 1998). A district court "should not indulge a nonmoving party's inferences if they do not 'flow rationally from the underlying facts.' " *Id.* This reasoning is entirely logical and has been adopted in the Tenth Circuit. *See Thomas v. Salt Lake County*, 584 F.3d 246, 254 (10th Cir. 2009) (noting that because at summary judgment the parties are beyond the pleading phase of litigation, "**a plaintiff's version of the facts must find support in the record, and a court should not adopt a version of the facts that no reasonable jury could believe**" (bold emphasis added)); *see also Rice v. Office of Service Members' Group Life Inx.*, 260 F.3d 1240, 1250 (10th Cir. 2001) (affirming summary judgment in dispute regarding validity of change in life insurance beneficiary designation and concluding "no reasonable jury would have concluded that Evans exerted undue influence over decedent to cause him to make her the beneficiary" of contested life insurance policy).

Furthermore, despite Plaintiff's having pleaded a class action, summary judgment is proper even prior to resolution of the issue of class certification. *See Panatronic USA v. AT&T Corp.*, 287 F.3d 840 (9th Cir. 2002).

## FDCPA Lawsuits

When analyzing a claim under the FDCPA, the "overwhelming majority of Courts of Appeals" have applied some form of the "least sophisticated consumer" standard. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 n.3 (3d Cir. 2015). "The Tenth Circuit appears to have

never explicitly embraced-but certainly never disclaimed-the standard." *Id.* In an unpublished decision, the Tenth Circuit recognized that other circuits apply an objective standard when analyzing FDCPA claims, "measured by how the 'least sophisticated consumer' would interpret the notice from the debt collector." *Ferree v. Marianos*, No. 97-6061, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (citation omitted); *see also Fouts v. Express Recovery Servs., Inc.*, 602 Fed.Appx. 417, 421 (10th Cir. 2015) (applying the "least sophisticated consumer" standard). Based on this guidance from the Tenth Circuit, this Court should apply the least sophisticated consumer standard to Plaintiff's claim. The inquiry under this standard is "how the least sophisticated consumer—one not having the astuteness of a [lawyer] or even the sophistication of the average, everyday, common consumer—understands the notice . . . she receives." *Ferree*, 129 F.3d at *1 (*quoting Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996)). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Moreover, violations of section 1692g of the FDCPA are treated as question of law and based on whether they are misleading to the least sophisticated consumer. The U.S. Courts of Appeal for the Second, Third, Sixth, Eighth, and Ninth Circuits conclude that the issue is a question of law. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000) (noting that the majority of courts that considered the question of whether language in a collection letter contradicts or overshadows a required validation notice that informs debtors of their legal rights has determined that whether the least sophisticated consumer would be misled by a collection letter is a question of law); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997); *see also Fed.*

*Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 508 n.2 (6th Cir. 2007) (*citing Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004)).

*Terran v. Kaplan* is illustrative of this general consensus. In *Terran*, the U.S. Court of Appeals for the Ninth Circuit noted that "the caselaw makes clear that the question [of] whether language in a collection letter overshadows or contradicts the validation notice so as to confuse a least sophisticated debtor is a question of law." *Terran v. Kaplan*, 109 F.3d at 1432. *Terran's* decision to treat this as a question of law was supported by the rationale behind the de novo standard of review for contracts and other written instruments, such as trusts and collective bargaining agreements. *Id.* The determination of whether language in a collection letter is deceptive, the court reasoned, "does not turn on the credibility of extrinsic evidence." *Id.* Rather, just as in contract cases, the language of the collection letters themselves is undisputed; therefore the court can analyze the language to determine if it comports with the FDCPA. *Id.* at 1431–32.

Furthermore, a collection letter's interpretation should be a question of law in § 1692e cases when the letters speak for themselves. In *Schweizer v. Trans Union Corp.*, 136 F.3d 233 (2d Cir. 1998), the debtor raised a claim under § 1692e(10), which prohibits the general use of any "false representation or deceptive means" when collecting a debt. 15 U.S.C. § 1692e(10); *Schweizer*, 136 F.3d at 235. In *Schweizer*, the debtor had received a collection letter for a debt of $15 in an envelope labeled "ELECTRONICALLY TRANSMITTED BY LASON SYSTEMS, INC. FOR PRIORITY POSTAL DELIVERY" and "Priority-Gram," despite the fact that the letter was delivered by mail. *Id.* at 236. The debtor alleged that this simulated a telegram and created a false sense of urgency, in violation of § 1692e. *Id.* The district court entered summary judgment for the debt collector. *Id.* On appeal, it was argued that the question of whether a

violation existed should have been sent to the jury; however, the Second Circuit rejected that argument and declared that the question of deceptiveness was appropriate for summary judgment, and affirmed the district court's order of summary judgment for the debt collector. *Id.* at 238.

## B. THIS COURT LACKS JURISDICTION AND SHOULD DISMISS THIS CASE

The U.S. Supreme Court established in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), that a plaintiff must show by pleading an injury-in-fact in order to show standing, which is a requirement for a court to have jurisdiction over a case. *Spokeo* dealt with another consumer protection statute—the Fair Credit Reporting Act ("FCRA")—in the context of a class action. The plaintiff in *Spokeo* alleged that the defendant published false information about him on its website. *Id.* The district court dismissed the plaintiff's claim in "for lack of standing, but a panel of the Ninth Circuit reversed." *Id.* at 1544. The Supreme Court held that the Ninth Circuit's analysis was incomplete, despite finding that there was adequate allegation of injury-in-fact after it ruled that " 'Spokeo violated *his* statutory rights, not just the statutory rights of other people,' and, second, that 'Robins's personal interests in the handling of his credit information are individualized rather than collective.' " *Id.* at 1544–45. The Supreme Court determined that the Ninth Circuit failed to analyze both requirements for establishing standing based on injury-in-fact, which are that the injury-in-fact must be both (1) concrete and (2) particularized. *Id.* at 1545. The Supreme Court held that the Ninth Circuit overlooked the "concreteness" requirement and remanded based on that. *Id.* In providing guidance on remand, the Supreme Court stated that the power of the judiciary "extends only to 'Cases' and "Controversies,' Art. III, § 2. And ' " '[n]o principle is more fundamental to the judiciary's proper role in our system of government

than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." ' " *Id.* at 1547. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* An " ' irreducible constitutional minimum' of standing consists of three elements. [Citation omitted]. The plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 1548.

In elaborating on what a "particularized" injury is, the *Spokeo* Court stated a particularized injury " 'must affect the plaintiff in a personal and individual way.' " *Id.* "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.' " *Id.* "A 'concrete' injury must be 'de facto'; **that is, it must actually exist.** [Citation omitted]. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.' " *Id.* (bold emphasis added).

Given that the alleged violation was statutory in *Spokeo*, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, **Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.** See *Summers*, 555 U.S. at 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (' [D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing' )." *Id.* at 1549 (Bold emphasis added). In remanding, the Supreme Court ruled that "**Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A**

**violation of one of the FCRA's procedural requirements may result in no harm."** *Id.* at 1550 (Bold emphasis added).

Since the *Spokeo* decision, other circuit courts of appeal have applied the holding and reasoning to FDCPA cases, finding that the district court lacks jurisdiction over the case and, therefore affirmed dismissal. One such case is the recent case of *Casillas v. Madison Avenue Assoc., Inc.*, 926 F.3d 329 (7th Cir. 2019). The Seventh Circuit affirmed the district court's dismissal of a class action based on a violation of § 1692g for failing to specify in the validation notice that a dispute or request for original creditor information must be in writing. It stated in its opening line: "The bottom line of our opinion can be succinctly stated: no harm, no foul." *Id.* at 331. It summarized the facts of the case and how the debtor did not have standing:

> [The debt collector] made a mistake. The Fair Debt Collection Practices Act requires debt collectors to notify consumers about the process that the statute provides for verifying a debt. [The debt collector] sent [the debtor] a debt-collection letter that described the process, but it neglected to specify that she had to communicate in writing to trigger the statutory protections. [the debtor] noticed the omission and filed a class action against [the debt collector].
>
> The only harm that [the debtor] claimed to have suffered, however, was the receipt of an incomplete letter— and that is insufficient to establish federal jurisdiction. As the Supreme Court emphasized in *Spokeo, Inc. v. Robins*, [the debtor] cannot claim "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." __ U.S. __, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions. Because [the debt collector]'s violation of the statute did not harm [the debtor], there is no injury for a federal court to redress.

*Id.* at 331–32.

The *Casillas* Court noted that the class representative did not allege that she tried to dispute the debt, let alone try to dispute it orally, and that "[w]hen [she] received the incomplete notice, she already knew that she would not dispute her debt." *Id.* at 332, 334, 337. *Casillas*

began its legal analysis "by emphasizing a basic point: the fact that Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement [of the Fair Debt Collection Practices Act],' 15 U.S.C. § 1692k(a), **does not mean that Casillas has standing**." *Id.* at 333 (Bold emphasis added). It stated that the debtor "cannot demonstrate standing simply by pointing to [the debt collector]'s procedural violation. She must show that the violation harmed or 'presented an "appreciable risk of harm" to the underlying concrete interest that Congress sought to protect.' " *Id.* Based on this, the Court affirmed the dismissal. *Id.* at 339. In so ruling, the Court also stated in a footnote that the "unsophisticated consumer" standard "is a rule for interpreting a debt-collection letter to determine whether it is misleading ... not a rule permitting those who have not been injured to vindicate the rights of those who have." *Id.* at n. 3.

Another case is that of *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018). *Hagy* involved a claim alleging violations of the FDCPA based on a letter that failed to disclose that it was a "communication ... from a debt collector." *Id.* at 621–23. In analyzing the standing issue, the Court stated, "In one sense, it seems easy to say that the [debtors] have standing to bring a claim against [the debt collector] under the Act with respect to his June 30 letter. The complaint makes allegations with respect to each element of the cause of action: (1) [the debt collector] sent a letter to the [debtors] about a debt implicating a duty established by the Act; (2) the letter failed to include the required disclosure; and (3) the [debtors] seek statutory damages. These kinds of allegations usually eliminate any doubts about Article III standing and usually allow the parties and the court to move on to the merits. But usually is not always." *Id.* at 620–21. The Court stated that this "leaves the possibility that Congress's creation of a statutory injury and damages suffices to satisfy Article III's standing imperative. Congress created a cause of action— and

injury— that covers [the debt collector]'s failure to disclose in his June 30 letter 'that the communication [wa]s from a debt collector.' 15 U.S.C. § 1692e(11). But it is not that simple, as the Supreme Court recently established in *Spokeo*. To satisfy the injury in fact requirement, the [the debtors] must point to some harm other than the fact of 'a bare procedural violation.' *Spokeo*, 136 S.Ct. at 1550. Not all procedural violations, not even all inaccuracies, cause real harm." *Id.* at 621. "What makes this case different is that [the debt collector] challenges Congress's authority to create this injury— to create an injury in fact that involves no harm of any sort that could satisfy the injury-in-fact requirements of Article III." *Id.* The Court stated that "[a]t this point in the case, no one plausibly argues (or even alleges) that the [the debtors] suffered an actual injury and damages from the letter." *Id.* "[T]he [debtors] have not shown, in truth have not even tried to show, that this failure to disclose caused them any actual harm beyond that 'bare procedural violation,' " and "[a]s [the debtors] argued in their briefs and as they reiterated at oral argument, the letter was 'hurtful' only 'because it did not provide the [required] notice.' [Citation omitted]. They do not say that the non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm."[1] *Id.* at 622. Based on this the Court vacated the district court's grant of summary judgment and ordered dismissal of the case because the district court lacked subject matter jurisdiction.

The case *sub judice* is very similar to the cases of *Casillas* and *Hagy*. Assuming, *arguendo*, that Defendant violated the FDCPA based on the Language in the Letter, such violation rises to the level of a "bare procedural violation" and Plaintiff has not and cannot show any particularized or concrete injury-in-fact. In fact, Plaintiff's deposition testimony reveals that

---

[1] *Hagy* also stated "We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Hagy*, 882 F.3d at 622.

he did call the numbers listed in the letter. Moreover, there is no allegation in his Complaint that Plaintiff attempted or desired to contact Defendant; and Plaintiff's deposition testimony reveals that he did not attempt to contact Defendant in response to the Letter in any way other than by phone. As such, he did exactly what the Letter suggested to dispute the debt and he cannot show how he has suffered any actual injury based on the Language.[2]

For the foregoing reasons, this Court should find that Plaintiff does not have standing because he has not suffered any injury-in-fact and, therefore, there is no case or controversy for this Court to hear; therefore this case should be dismissed with prejudice for lack of subject matter jurisdiction.

## C. ALTERNATIVELY JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED IN FAVOR OF DEFENDANT GIVEN THE UNDISPUTED FACTS AND APPLICABLE LAW

If this Court determines that Plaintiff has standing and that it has jurisdiction over this case, then it should find, as a matter of law, that judgment should be entered in favor of Defendant because the undisputed facts show that Defendant is entitled to judgment as there is no violation of the FDCPA in light of the applicable standards and law applied to the facts of this case, but even if there is a violation, the bona fide error defense of the FDCPA is applicable.

**There is no violation given the least-sophisticated consumer standard**

i.    <u>Actionable FDCPA violations must confuse the least sophisticated consumer</u>

In order to prevail under 15 U.S.C. § 1692e, a consumer must show both that a false statement was made in a letter **and** that the least sophisticated consumer would be confused or misled by the statement in the letter. *Wahl v Midland Credit Mgmt.*, 556 F3d 643 (7th Cir. 2009).

---

[2] Plaintiff has also admitted through discovery that he has suffered no actual damages in this case. *See* Appendix - Exhibit "D," Responses to Requests for Admission Nos. 1 and 2.

In *Wahl*, a debt collector sent some demand letters to a consumer debtor stating amounts were due. *Id.* at 644. The amounts stated in the letters were different because interest was accruing. *Id.* The letters referred to "principal balance" amounts that actually included interest and late fees. *Id*. The consumer debtor filed a putative class action claiming violations of the FDCPA. *Id.* at 645. The consumer debtor claimed that the stated "principal balance" was false because it included more than just principal. *Id.* The trial court granted summary judgment to the debt collector "because, regardless of the nature and amount of the debt owed to BP, Midland accurately stated the amount it was." *Id.* On appeal the Seventh Circuit agreed. *Id.* On appeal the Court stated that the consumer debtor's "claim is dead in the water," is "hypertechnical at best [and] is flawed from beginning to end." *Id.* The Court stated that "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCP even if it is false in some technical sense." *Id.* at 645–46. The Court held that "[The consumer debtor] can't win simply by showing that [the debt collector]'s use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer." *Id.* at 646. In sum, "[the consumer debtor]'s argument rests on empty semantics." *Id.* at 647.

Another case standing for this confusion requirement is *Meininger v GC Servs. Ltd. P'ship (In re Hathcock),* 437 B.R. 696 (M.D. Fla. 2010). In *Meininger*, the language at issue was " '[u]nless you within thirty (30) days after your receipt of GC Services' *initial written notice* to you concerning this debt, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by GC Services.' " *Id.* at 702 (original emphasis provided). Based on this language, "three FDCPA violations" were alleged, including "First, that the Collection Letter did not include a Validation Notice in the form required by section 1692g; second, that through the

Collection Letter, GC Services engaged in conduct 'the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt,' in violation of section 1692d; and third, that GC Services violated sections 1692e(2)(a) and (10) because the Collection Letter states the name 'Capital One' more often than it states the name 'GC Services.'" *Id.* at 700. The defendants' motions to dismiss were granted. In granting the motions and finding the language in question did not violate the FDCPA, the court disposed of the 1692g claim that use of the word "initial" violated the FDCPA by stating:

> [The letter] merely reports that the account has not been paid, and requests that payment be made, without setting any time limits that might conflict with the statutory thirty day period to dispute the debt. **Utilizing the least sophisticated consumer standard, this Court finds, as a matter of law, that a recipient of the Collection Letter would understand that the thirty day period to dispute the debt commenced upon receipt of the Collection Letter.** The Court further finds that the use of the words "initial written notice" in the Validation Notice of the Collection Letter would not be confusing to the least-sophisticated consumer.

*Id.* at 703. As to the claim that the letter violated section 1692d, the court stated:

> Because the Court has found that the Collection Letter does not violate section 1692g, the Court also finds that, using the least sophisticated consumer standard, the Collection Letter cannot, as a matter of law, be considered 'conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Thus, there has been no violation of section 1692d.

*Id.* Finally, as to the claim that the letter violated section 1692e, the court stated:

> Again utilizing the least-sophisticated consumer standard, the Court finds that the references to GC Services and Capital One in the Collection Letter are not confusing; the Collection Letter clearly states that the account has been placed with GC Services for collection. The Court also finds as a matter of law that the references to the names of GC Services and Capital One in the Collection Letter are not a false representation or a deceptive means.

*Id.* at 704.

Furthermore, Plaintiff's unpleaded claim that the Amount Due stated in letter is somehow

violative of the FDCPA fails as a matter of law.[3] Plaintiff's case law cited in his Motion for Summary Judgment actually vindicates Defendant's statement of the Amount Due. Specifically, the Letter expressly states that the Amount Due "is the balance as of the date listed above." This absolutely satisfies the requirement of 11 U.S.C. § 1692g(a)(1). The remainder of this sentence in the Letter clarifies that the Amount Due may or may not include amounts other than principal: interest, accruing interest, costs, or other fees and, given that the letter will naturally arrive after it was sent and therefore the Amount Due will be as of a date in the past, a directive to contact Defendant in order to determine the balance in light of the additional amounts. Plaintiff cites to the Second Circuit in *Carlin*, wherein the Court stated:

> [A] statement is incomplete where, as here, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase.

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 2016 (2d Cir. 2017). The Letter does exactly what *Carlin* requires: that it provides information to the debtor so that it can "resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase."

The foregoing cases are good law and show that, as a matter of law, there is no violation of the FDCPA based on the Language. Just like in *Wahl*, Defendant has correctly stated the Amount Due and correctly provided the amount due as of the date of the letter. Thus, there is no violation when Defendant states the amount due as of the date of the letter and provides

---

[3] Defendant objects to Plaintiff's attempt to adjudicate unpleaded claims, including this one. Defendant has filed a Motion to Strike regarding these unpleaded claims in the abundance of caution. Nevertheless, Plaintiff cannot show standing on this unpleaded claim either.

information to Plaintiff that the Second Circuit in *Carlin* stated should be provided. Moreover, similar to *Meininger*, the least sophisticated consumer would know "that the thirty day period to dispute the debt commenced upon receipt of the [] Letter." *Meininger*, 437 B.R. at 703. Furthermore, Plaintiff's own conduct does not manifest any confusion because he actually contacted Defendant via telephone because he was worried about a possible wage garnishment, not because he was worried about the amount of the alleged debt or worried about how much time he had to dispute the debt. Thus, any worry of Defendant was not the result of any technical violation related to the Language in the Letter or statements regarding the Amount Due.

ii.    FDCPA Violations must be material

A violation of the FDCPA must also be material in order to be actionable, "as it is subsumed within the 'least sophisticated debtor' standard." *Jensen v Pressler & Pressler,* 791 F3d 413, 415 (3d Cir. 2015) ("Because we view the materiality requirement as a different way of expressing the least sophisticated debtor standard, we are satisfied that adopting a materiality requirement for claims brought under § 1692e is consistent with Congress's intent in this regard. Indeed, refusing to adopt this materiality requirement would be inconsistent with decades of our own jurisprudence employing the least sophisticated debtor standard." *Id.* at 421.). At issue in *Jensen* was the debt collector's issuance and use of a subpoena sent to a debtor that was required to bear the name of the court clerk; however, the debt collector used the incorrect name of the court clerk on the subpoena. *Id.* at 416. The debtor claimed that the debt collector's issuance and use of the subpoena with the incorrect name was "fraudulent" and violated section 1692e of the FDCPA, and even filed a putative class action to enforce her claim. *Id.* The Court did not find the misstatement at issue in the case material and, as such, affirmed the trial court's grant of

summary judgment in favor of the debt collector. *Id.* at 415. In so holding, the Court stated that

the debtor "is obviously correct as a factual matter, insofar as using [the incorrect court clerk]'s

name is a 'false representation' in the most technical sense of the phrase." *Id.* at 417. The Court

cited sister jurisdictions that have imposed materiality requirements for FDCPA violations. *See*

*Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009); *Elyazidi v. SunTrust Bank*,

780 F.3d 227, 234 (4th Cir. 2015); *Donohue v. Quick Collect, Inc., 592 F.3d 1027*, (9th Cir.

2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009). In following suit

of these other jurisdictions, the Court stated that " a false statement is only actionable under the

FDCPA if it has the potential to affect the decision-making process of the least sophisticated

debtor; in other words, it must be material when viewed through the least sophisticated debtor's

eyes." *Id.* at 421. "Thus, the materiality requirement, correctly applied, effectuates the purpose of

the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that

would not affect the actions of even the least sophisticated debtor." *Id.* at 422.

Moreover, providing information does not violate the FDCPA. *Shimek v. Weissman,*

*Nowack, Curry & Wilco, P.C.*, 323 F.Supp.2d 1344, (N.D. Ga. 2003). In *Shimek*, the debt

collector sent the 1692g notice to a homeowner, and in such notice stated that it had filed a lien

against the homeowner's house. *Id.* at 1346. The homeowner brought suit, alleging the "[debt

collector]'s practice of filing the liens prior to or contemporaneously with sending the letters

violates the FDCPA," including sections 1692e and 1692g. *Id.* As to the claim for violation of

1692g, the court stated "In the absence of any express conflict between the lien language and the

validation notice, the Court has found nothing in the letter that would mislead the least

sophisticated consumer into believing that she had less than 30 days to dispute the debt." *Id.* at

1349. "Accordingly, because the Court has found that even the least sophisticated consumer would not be mislead [sic] about her right to dispute the debt, the Court concludes that Defendant did not violate Section 1692g(a) of the FDCPA." *Id.* at 1350. As to the claim for violation of 1692e, the homeowner "allege[d] that inclusion of the lien language also constitutes a deceptive means to collect a debt." *Id.* at 1350. "For the same reasons set forth in connection with Plaintiffs' overshadowing claim [1692g], the Court concludes that the lien language in Defendant's letter merely provided information and **was not designed to mislead or deceive even the least sophisticated consumer as to his or her right to dispute the debt**." *Id.* (Bold emphasis added). Based on this the trial granted the debt collector's motion for summary judgment as to these claims. *Id.* "1692g(a)(3) permits consumers to dispute the validity of a debt orally, and it does not impose a writing requirement." *Clark v Absolute Collection Serv.,* 741 F3d 487, 491 (4th Cir. 2014).

Here Plaintiff's conduct manifests that the alleged violation in the Complaint is not material. Specifically, Plaintiff chose to contact Defendant via telephone because he wanted to do that and because it was the easiest way to contact Defendant. Thus, the Language's reference to other means can't be considered material. Furthermore, Plaintiff also contacted Defendant right after he received the letter because he was worried about getting garnishments. Thus, any violations, whether alleged by Plaintiff or not alleged, are not material because Plaintiff was not even worried or confused by such violations. Lastly, Plaintiff's failure to plead two of his claims identified in this Motion for Summary Judgment also manifest that they are not material.

iii.   <u>The least sophisticated consumer would not be misled or confused in this case</u>

In the case *sub judice*, the least sophisticated consumer would actually do what the Language in the Letter provides: call one of the numbers. In the Third Circuit, when dealing with a letter that merely stated that a dispute could be made orally when it is required to be done in writing to be legally effective, "**it appears more likely that the 'least sophisticated debtor' would take the easier—but legally ineffective—-alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute.**"[4] *Caprio v Healthcare Revenue Recovery Group, LLC,* 709 F.3d 142, 152 (3d Cir. 2013) (bold emphasis added).

Not only does the Letter provide a means to dispute the debt orally, which the Third Circuit states is the way the least sophisticated consumer would choose, but it also provides a written way to dispute the debt. As such, the least sophisticated would not be misled or confused or otherwise deceived when presented with two options to dispute the debt, one being oral and the other being written. Furthermore, the Plaintiff in this case did exactly what the Third Circuit stated, which was making a telephone call and even testified himself that he has always disputed debts by making a phone call because that is easier to do than any other way. Lastly, given that Plaintiff fits the profile of the least sophisticated consumer, he was clearly not confused, given his conduct as testified in his deposition, regarding the manner to make a dispute, the time to make a dispute, and the balance stated in the Letter. Rather, the only worry, or fear, Plaintiff had was related to getting his wages garnished. If he were truly confused by anything else in the Letter, that would cause some fear or worry as to what he could or should do and when.

[4] At the time of *Caprio*, in the Third Circuit, for a 1692g(a)(3) dispute to be effective, it was required to be in writing and an oral dispute is ineffective; however, in February of this year such requirement was overturned *in Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020).

iv.    Requiring a dispute to be made in particular form is not a violation

Assuming, *arguendo*, that the Letter and its Language mandates a particular form or forms of dispute, such mandate is not a violation. "[A] requirement to dispute a debt in writing is not a violation of § 1692(a)(3) [sic]." *Jolly v Shapiro,* 237 F Supp 2d 888, 895 (N.D. Ill. 2008); *see also Sturdevant v Thomas E. Jolas, P.C.*, 942 F Supp 426 (W.D. Wis. 1996) ("[R]equiring a debtor to dispute the validity of a debt in writing does not violate § 1692g(a)(3)." *Id.* at 429.). Additionally , "even if consumers may be entitled to dispute the debt by telephone, the statute does not require the collection agency to give a telephone number to the consumer or otherwise encourage such an inefficient and problematic practice. If Congress wished to require disclosure of telephone numbers it could have easily added the requirement to its detailed instructions. It did not." *Nasca v GC Servs. Ltd. P`shp*, No. 01-CIV-10127, 2002 WL 31040647 (S.D. N.Y. Sept. 12, 2002) (unpublished).  Finally, "[t]he plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written "dispute," while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005). Therefore, when the Language in the Letter provides for both written and oral disputes, it does not violate the FDCPA in that regard.

**Even if there is a violation, the bona fide error defense absolves Defendant of liability**

In order to successfully assert this defense, Defendant must prove that the alleged violation was "(1) unintentional, (2) a bona fide error, and (3) made despite 'the maintenance of procedures reasonably adapted to avoid' the violation." *Johnson v Riddle*, 305 F3d 1107, 1121 (10th Cir. 2002). Moreover, Defendant "need not employ a procedure that catches every error before it is made, rather it must have reasonable procedures to prevent errors to succeed in its

defense." *Reed v AID Assocs*., 573 F. Supp. 2d 1105, 1108 (S.D. Ind. 2008). Also, in the Tenth Circuit, the bona fide error defense of 15 U.S.C. §1692k((c) can be applicable when a debt collector has an erroneous belief that it can collect amounts not permitted by law. *See Johnson v Riddle*, 305 F3d at 1121.

In *Abdollahzadeh v. Mandarich Law Group, L.L.P.*, 922 F.3d 810 (7th Cir. 2019), a debt collector used the date of last attempted payment to calculate the statute of limitations. *Id.* at 812. However, the last attempted payment did not clear and the date of the last successful payment meant that the account was time-barred when the debt collector sued the debtor in state court. *Id.* The Seventh Circuit upheld the district court decision granting summary judgment in favor of the debt collector on the debtor's FDCPA's claims, concluding that the debt collector satisfied the elements of a bona fide error defense. *Id.* The court concluded that the error was unintentional despite that the fact that the debt collector opposed dismissal of the state court lawsuit after learning that the debt was time-barred because the debt collector "determined that it had a good-faith basis to oppose the dismissal motion." *Id.* at 816. The court rejected the debtor's argument that the debt collector should not have relied on information provided by the creditor where the creditor disclaimed the accuracy of the information provided about the debt, stating that " 'the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense.' " *Id.* (*quoting Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004)). In affirming, the court concluded that the debt collector's procedures were reasonably adapted to avoid the error where: the debt collector relied on information provided by the creditor; account data was automatically scrubbed for out-of-statute debt; the creditor provided an affidavit; and an attorney examined the account to check for time-barred debt. *Id.* at 818 It stated as follows:

The law firm relied on account information provided by its client. The account data was subjected to an automated scrub that culled out-of-statute debts, and CACH supplied an affidavit attesting that the information in its report was correct. Finally, a Mandarich attorney examined the account to check whether a collection action would fall outside the applicable limitations period. These procedures didn't catch the mistake here, but "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."

*Id.*

The case *sub judice* is an appropriate one for applying the bona fide error defense of § 1692k(c) of the FDCPA. Just like the debt collector in *Abdollahzadeh*, Defendant satisfies the requirements for establishing a bona fide error. Specifically, Defendant had no intention of committing a violation of the FDCPA, and its procedure of making changes to this letters and reviewing them prior to sending them, together with having its attorney examine and revise the form letters, manifest this intention of (1) trying to be compliant with the FDCPA and (2) not violating the FDCPA. These facts also manifest that the error was truly bona fide. Finally, the procedures, both written and unwritten, used by Defendant speak directly to what language is used in the letters and, therefore, are reasonably adapted to avoid the alleged violation complained of in the Complaint. Based on this, even if a violation of the FDCPA has occurred, Defendant has a defense under 11 U.S.C. 1692k(c) and, as a matter of law, the Court should rule in Defendant's favor and dismiss this case with prejudice.

CONCLUSION

In conclusion, a review of the Complaint and the actual letter that is the subject of the Complaint, together with the applicable law, shows that Plaintiff lacks standing, which prevents this Court from having subject matter jurisdiction. This requires this Court to dismiss this case. However, even if this Court finds that it does have jurisdiction over this case, as a matter of law,

and given the undisputed facts, no violation has been committed by Defendant, but even if Defendant has committed a violation of the FDCPA, such violation is subject to the bona fide error defense contained in the FDCPA, which means this Court can and should dismiss this case with prejudice because Defendant has established this defense. For these reasons Plaintiff has not Article III standing and, given the undisputed facts, as a matter of law this Court should dismiss with prejudice this case.

DATED this 31st day of July, 2020.

/s/ Chad C. Rasmussen
Chad C. Rasmussen
*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2020, I sent a copy of this Motion by electronic court filing notification, to the following:

David J. McGlothlin
KAZEROUNI LAW GROUP, APC
2633 E Indian School Road, Ste. 460
Phoenix, AZ 85016
(602) 900-1288
ryan@kazlg.com
david@kazlg.com

Theron D. Morrison
Cory Cottam
MORRISON LAW GROUP
290 25th St., Ste 102
Ogden, UT 84401
(801) 392-9324
therondmorrison@gmail.com
cory@morlg.com

/s/ Chad C. Rasmussen
Chad C. Rasmussen