David J. McGlothlin (17389 UT)
david@kazlg.com
Ryan L. McBride, Esq. (16218 UT)
ryan@kazlg.com
Kazerouni Law Group, APC
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRANCISCO RODRIGUEZ, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, | Case No. 2:20-cv-00120-JNP |
| Plaintiff, | PLAINTIFF FRANCISCO RODRIGUEZ'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CASCADE COLLECTIONS, LLC, | |
| Defendant. | District Judge: Hon. Jill N. Parrish |

///

///

///

///

///

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS ..... 1

III. STATEMENT OF ADDITIONAL MATERIAL FACTS .................................. 12

IV.  ARGUMENT ..................................................................................... 14

    A. MOTION TO DISMISS ....................................................................... 14

      i. Plaintiff Has Article III Standing ................................................... 16

    B. MOTION FOR SUMMARY JUDGMENT ................................................. 19

    C. FAIR DEBT COLLECTION PRACTICES ACT ........................................ 20

      i. Materiality and the Least Sophisticated Consumer Standard ...................... 20

      ii. Defendant Violated the FDCPA in Three Different Ways under the Least Sophisticated Consumer Standard ............................................................... 24

        1. *Defendant Limited Plaintiff's Time Frame to Dispute* ...................... 24

        2. *Defendant Limited Methods by Which to Dispute* ............................. 27

        3. *Defendant Did Not Provide An Accurate Balance of Debt* ............... 31

      iii. Defendant's Bona Fide Error Defense Fails ................................................. 35

        1. *Mistake of Law is Not a Bona Fide Error* ......................................... 36

        2. *There Was not An Error* .................................................................... 38

        3. *Defendant Did not Maintain Reasonable Procedures* ....................... 39

V.   CONCLUSION ................................................................................... 40

# TABLE OF AUTHORITIES

## C<small>ASES</small>

*Afewerki v. Anaya Law Group,*
    868 F.3d 771 (9th Cir. 2017) ................................................................ 4, 25, 28

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 255 (S. Ct. 1986) ................................................................... 23

*Baker v. G.C. Services Corp.,*
    677 F.2d 775, 778 (9th Cir. 1982) ............................................................... 26

*Barlow* v. *United States,*
    32 U.S. 404, 7 Pet. 404, 411, 8 L. Ed. 728 (1833) ..................................... 45

*Bones v. Honeywell Int'l, Inc.,*
    366 F.3d 869, 875 (10th Cir. 2004) ............................................................. 23

*Camacho v. Bridgeport Fin., Inc.,*
    430 F.3d 1078 (9th Cir. 2005) ........................................................... 34, 35, 37

*Campuzano-Burgos v. Midland Credit Management, Inc.,*
    550 F.3d 294, 298 (3d Cir. 2008) ................................................................ 31

*Caprio v. Healthcare Revenue Recovery Group, LLC,*
    709 F.3d 142, 152 (3rd Cir. 2013) ......................................................... 36, 37

*Caputo v. Prof'l Recovery Servs., Inc.,*
    261 F. Supp. 2d 1257-58, 1255 (D. Kan. 2003) ......................................... 43

*Carlin v. Davidson Fink LLP,*
    852 F.3d 207, 216 (2d Cir. 2017) ........................................................... 41, 42

*Casillas v. Madison Ave. Assocs.,*
    926 F.3d 329 (7th Cir. 2019) ...................................................................... 20

*Celotex Corp. v. Catrett*,

    477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................... 22

*Clark v. Capital Credit & Collection Services, Inc.*,

    460 F.3d 1162, 1171 (9th Cir. 2006) ...........................................26, 27, 28

*Clomon v. Jackson*,

    988 F.2d 1314, 1318-19 (2d Cir. 1993) ................................................... 27

*Conley v. Gibson*,

    355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) .......................................... 16

*Cooper v. Stephen Bruce & Assocs.*,

    2019 U.S. Dist. LEXIS 1013, 2019 WL 97826, at *4 (W.D. Okla.) ........................ 21

*Donohue v. Quick Collect, Inc.*,

    592 F.3d 1027 (9th Cir. 2010) ................................................................ 25

*Edwards v. McCormick*,

    136 F. Supp. 2d 795, 801 n.8 (S.D. Ohio 2001) ......................................... 44

*Fed. Election Comm'n v. Akins*,

    524 U.S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) ............................... 19

*Frye v. Bowman*,

    193 F. Supp. 2d 1070, 1088-89 (S.D. IN 2002) ......................................... 45

*Gadd by and through Gadd v. U.S.*,

    971 F. Supp. 502, 505 (D. Utah 1997) ................................................... 17

*Gause v. Med. Bus. Consultants, Inc.*,

    424 F. Supp. 3d 1175, 1198 (M.D. Fla. 2019) ......................................... 20

*Gonzales v. Arrow Fin. Servs., LLC*,

    660 F.3d 1055, 1062 (9th Cir. 2011) ..................................................... 30

*Gonzalez v. Kirk Cullimore, Jr. et al*,

    Case No. 20160373 (Utah S. Ct. 2018) ................................................. 24

*Graziano and Wilson v. Quadramed Corp.*,

    225 F.3d 350 (3d Cir. 2000) ................................................................. 36

*Graziano v. Harrison*,

    950 F.2d 107, 111 (3d Cir. 1991) ......................................................... 26

*Grossman v. Novell, Inc.*,

    120 F.3d 1112, 1126 (10th Cir. 1997) ................................................... 17

*Guerrero v. RJM Acquisitions, LLC*,

    499 F.3d 926, 934 (9th Cir. 2007) ........................................................ 26

*Hargis v. Equinox Collection Servs.*,

    2019 U.S. Dist. LEXIS 92336 (N.D. Ok. 2019) .............................. 35, 37

*Hartman v. Meridian Fin. Servs., Inc.*,

    191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002) ..................................... 44

*Irwin v. Mascott*,

    112 F. Supp. 2d 937 (N.D. Ca. 2000) ................................................... 46

*Jenkins v. Heintz*,

    124 F.3d 824, 834, 835 (7th Cir. 1997) ................................................ 44

*Jensen v. Pressler & Pressler*,

    791 F.3d 413, 421 (3d Cir. 2015) .................................................... 25, 28

*Jensen v. Reeves*,

    45 F. Supp. 2d 1265 ............................................................................. 16

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,

    559 U.S. 573 (S. Ct. 2010) ....................................................... 12, 45, 46

*Jeter v. Credit Bureau, Inc.*,

    760 F.2d 1168, 1174-74 (11th Cir. 1985) ............................................. 26

*Johnson v. Riddle*,

    296 F. Supp. 2d at 1287 (D. Utah 2003) ........................................... 9, 43

*Johnson v. Riddle,*
> 305 F.3d at 1121 (10th Cir. 2002) ........................................................... 9, 43

*Johnson v. Riddle,*
> 443 F.3d 723 (10th Cir. 2006) ................................................................. 9, 43

*Jolly v. Shapiro,*
> 237 F.Supp 2d 888 (N.D. Il 2002) ................................................................. 37

*Kistner v. Law Offices of Michael P. Margelefsky, LLC,*
> 518 F.3d 433, 441 (6th Cir. 2008) ................................................................. 31

*Kolstad* v. *American Dental Assn.,*
> 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999) .......................... 46

*Kort v. Diversified Collection Servs., Inc.,*
> 394 F.3d 530, 537 (7th Cir. 2005) ................................................................. 43

*Linda R.S. v. Richard D.,*
> 410 U.S. 614, 617 n.3 (1973) ........................................................................ 18

*Lujan v. Defenders of Wildlife,*
> 504 U.S. 555, 560-561 (1992) ................................................................. 18, 19

*Mashiri v. Epsten Grinnell & Howell,*
> 845 F.3d 984, 990 (9th Cir. 2017) ................................................................. 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
> 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ....................... 22

*Meininger v. GC Servs. Ltd. P'ship (In re Hathcock),*
> 437 B.R. 696 (M.D. Fla. 2010) ...................................................................... 32

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,*
> 214 F.3d 872 (7th Cir. 2000) ......................................................................... 39

*Mitchell v. King,*
> 537 F.2d 385 (10th Cir. 1976) ....................................................................... 17

*Moore v. Express Recovery Serv.*,

    2019 U.S. Dist. LEXIS 718 (D. Ut. 2019) ................................................ 3, 8, 25, 27

*Nasca v. GC Servs. Ltd. P'ship*,

    No. 01-CIV-10127, 2002 WL 31040647 (S.D. NY 2002) ........................................ 38

*Nicklaw v. CitiMortgage, Inc.*,

    2016 U.S. App. LEXIS 18206 ................................................................................ 19

*Peter v. GC Servs. L.P.*,

    310 F.3d 344 (5th Cir. 2002) ................................................................................ 40

*Philhower v. Express Recovery Servs.*,

    2014 U.S. Dist. LEXIS 57262 (D. Ut. 2014) ........................................................ 30

*Reichert v. Nat'l Credit Sys., Inc.*,

    531 F.3d 1002, 1005 (9th Cir. 2008) ................................................................. 8, 23

*Riccio v. Sentry Credit, Inc. Riccio v. Sentry Credit, Inc.*,

    954 F.3d 582 (3rd Cir. 2020) ................................................................................ 36

*Roman v. Cessna Aircraft Co.*,

    55 F.3d 542, 543 (10th Cir. 1995) ........................................................................ 16

*Rosado v. Taylor*,

    324 F. Supp. 2d 917, 933 (N.D. Ind. 2004) .......................................................... 43

*Russell v. Equifax A.R.S.*,

    74 F.3d 30, 35 (2d Cir. 1996) ................................................................................ 31

*Sartori v. Steider & Assocs., P.C.*,

    No. 1:15-CV-00991-JCH-LF, 2017 U.S. Dist. LEXIS 18803, 2017 WL 3602029, at

    *2 (D.N.M. Jan. 19, 2017) .................................................................................... 24

*Scheuer v. Rhodes*,

    416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) .................................... 16

*Shapiro v. Haenn*,

    222 F. Supp. 2d 29, 43 n.8 (D. Me. 2002) ............................................................ 44

*Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*,
  323 F.Supp.2d 1344 (N.D. Ga. 2003)..............................................28, 33

*Smith v. Transworld Systems, Inc.*,
  953 F.2d 1025, 1028 (6th Cir. 1992) ........................................26

*Soren v. Equable Ascent Fin., LLC*,
  2012 U.S. Dist. LEXIS 84355, 2012 WL 2317362,
  at *2 (D. Utah June 18, 2012).................................................24

*Spokeo, Inc. v. Robins*,
  194 L. Ed. 2d at 644 ...............................................18, 19, 21

*Swanson v. Southern Or. Credit Serv.*,
  869 F.2d 1222 (9th Cir. 1988) .................................................38

*Tourgeman v. Collins Fin. Servs., Inc.*,
  755 F.3d 1109, 1121 (9th Cir. 2014) .............................4, 25, 27

*Valandingham v. Bojorquez*,
  866 F.2d 1135, 1137 (9th Cir. 1989) .........................................22

*Veach v. Sheeks*,
  316 F.3d 690, 693 (7th Cir. 2003) ............................................41

*Wahl v. Midland Credit Mgmt.*,
  556 F.3d 643 (7th Cir. 2009) ..................................................42

*Welker v. Law Office of Daniel J. Horwitz*,
  699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010) ...............................35

*Wilhelm v. Credico, Inc.*,
  519 F.3d 416, 420 (8th Cir. 2008) ............................................48

*Young v. NPAS, Inc.*,
  361 F. Supp. 3d 1171 (D. Ut. 2019) ..........................................23

*Zinermon v. Burch*,
  494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990) ...............16

*Zuniga v. TrueAccord*,

    2020 U.S. Dist. LEXIS 95445 (D. Nm. 2020) .................................................... 20, 21

S<small>TATUTES</small>

15 U.S.C. § 1692g(a)(4) ................................................................................ 29

15 U.S.C. § 1692g(a)(5) ................................................................................ 29

15 U.S.C. § 1692 et seq. ................................................................................. 1

15 U.S.C. § 1692g(a)(1) ........................................................................... 39, 42

15 U.S.C. § 1692g(a)(3) ........................................................................... 29, 33

15 U.S.C. § 1692k(c) ................................................................................... 44

O<small>THER</small>

S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin.

    News 1695, 1699.  Section 1692g(a)(1) ............................................... 31

R<small>ULES</small>

Fed. R. Civ. P. 56(e) ................................................................................... 19

## I.  INTRODUCTION

Plaintiff Francisco Rodriguez ("Plaintiff"), by and through the undersigned counsel responds to Defendant Cascade Collections, LLC's ("Defendant") Motion to Dismiss or alternatively, for Summary Judgment. Plaintiff has Article III standing pursuant rulings in the Tenth Circuit. Further, Defendant has failed to distinguish any of the supporting case law that was provided by Plaintiff in support of Plaintiff's Motion for Summary Judgment.  Additionally, Defendant misinterprets and misapplies the least sophisticated consumer standard and the standard for materiality.  Finally, Defendant does not sufficiently allege an error, let alone a bona fide error defense.

Defendant attempted to contradict and obfuscate Plaintiff's rights as set forth in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") through the limiting language in its initial communication to Plaintiff in three different ways as described herein.  As a result, Defendant violated multiple sections of the FDCPA. There is no dispute regarding the material facts that establish Plaintiff's FDCPA claims against Defendant, which involve a letter sent to Plaintiff. Thus, the Court should deny Defendant's Motion to Dismiss and Motion for Summary Judgment, and grant Plaintiff's Motion for Summary Judgment.

## II.  PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

1.  **Agreed.**
2.  **Agreed.**

3.      Plaintiff's Complaint claims that the following language contained in the Letter is a violation of the FDCPA: "If you dispute the validity of this debt or any part of it, you must notify us either by writing to Cascade Collections, LLC, P.O. Box 970547, Orem, UT 84097, or by calling toll-free 855-978-7184 or locally (801) 900-3328 within thirty (30) days of the date of this letter; otherwise we will consider this debt to be valid and proceed accordingly." (Referred to hereafter as the "Language").

**Plaintiff's Response: Partially disputed. Plaintiff partially agrees as to the fact that this was one section of the Letter that Plaintiff claims violated the FDCPA. However, Plaintiff also pled that the entire Letter violated the 15 U.S.C. § 1692g(a). See Complaint ¶¶ 4, 30, 32-33.**

4.      Plaintiff's Complaint does not allege that the Letter's statement of the Amount Due is violative of the FDCPA; in fact the Complaint is silent on anything related to any amount owing.

**Plaintiff's Response: Disputed. Plaintiff's Complaint references the letter in question and alleges that the Letter violated the entire FDCPA. See Complaint ¶¶ 4, 30, 32-33. Plaintiff further alleges that the "initial communication to Plaintiff by Defendant included a written notice, the language of which overshadowed, weakened, and failed to comply with, the notice required by 15 U.S.C. § 1692g(a). Specifically, the notice attempted to limit and obfuscate the rights available to Plaintiff in a manner that creates a contradiction and would confuse the least sophisticated debtor into disregarding his or her rights pursuant to the validation notice required in 15 U.S.C. § 1692g by making the following statements:**

**If you dispute the validity of this debt or any part of it, you must notify us either by writing to Cascade Collections, LLC, P.O. Box 970547, Orem, UT 84097, or by calling toll-free 855-978-7184 or locally (801) 900-3328 within thirty (30) days of the date of this letter; otherwise we will consider this debt to be valid and proceed accordingly."**

**See Complaint ¶ 26.**

5.   Plaintiff's Complaint does not allege that the Letter contradicts any relevant time periods in violation of the FDCPA; in fact the Complaint is silent on anything related to any time period.

**Plaintiff's Response: Disputed. See Plaintiff's Response to Defendant's fact number 4.**

6.   **Plaintiff's Response: Agree.**

7.   Plaintiff's Complaint does not allege that he ever attempted to contact Defendant in order to dispute the debt, whether by telephone, in writing via the mail, or in any other way.

**Plaintiff Response:  Immaterial. This fact is immaterial because the violation is regarding the language in the Letter and whether it would confuse the hypothetical least sophisticated consumer, not Plaintiff. See *Moore v. Express Recovery Serv.*, 2019 U.S. Dist. LEXIS 718 (D. Ut. 2019); see also *Afewerki*, 2015 U.S. Dist. LEXIS 186253 (9th Cir. 2017) (citing *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014)). Plaintiff further disputes this fact as Plaintiff testified he made an attempt to contact Defendant via phone and left a voicemail, but never received a return call from Defendant. Defendant's Exhibit B, pg. 68, l. 3-9.**

8.   In fact, after receiving the letter, Plaintiff called Defendant by calling the

two numbers provided in the above language.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

9.     Plaintiff called Defendant because he wanted to prevent Defendant from garnishing his wages since Defendant had done that before and "caused [him] terrible hardships.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

10.     When Plaintiff got the letter, the only thing he feared was getting his wages garnished by Defendant.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

11.     Plaintiff did not fear that we would not be able to contact Defendant in a way other than provided in the Letter's language, that he would run out of time to contact Defendant, or that he did not know what amount the alleged debt was for.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

12.     Plaintiff never attempted to contact Defendant in any way other than by phone after receiving the Letter.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

13.     Despite having read the letter, Plaintiff believes that the Letter did not provide him a way to send something in writing to Defendant in order to dispute the debt.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

14. Plaintiff believes that his claim is about there not being an adequate way to communicate with Defendant.

    **Plaintiff's Response: Partially dispute. Plantiff partially agrees that this is one of the claims that Plaintiff believes this lawsuit is regarding. Plaintiff also believes that the lawsuit is regarding Defendant's limiting and confusing language regarding the time to response to the Letter, and the confusing language regarding the balance of the alleged debt. Declaration of Plaintiff Francisco Rodriguez "Plaintiff's Decl.", (ECF #17-1) ¶¶ 14-18.**

15. Plaintiff thinks an adequate way to contact Defendant includes an address to which to mail correspondence.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7. Furthermore, Plaintiff testified that "there's not adequate way to communicate with you guys." Defendant's Exhibit B, pg. 71, l. 19-23.**

16. **Plaintiff's Response: Agree.**

17. Despite having read the Letter, Plaintiff thought the PO Box provided in the Letter was only for payments and not disputes even though the Letter said "If you dispute the validity…to send it there."

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

18. Plaintiff found out he had a claim a few months after he received the Letter after talking to his attorney.

    **Plaintiff's Response: Immaterial. Whether Plaintiff found out about the violations by Defendant before or after talking with Plaintiff's attorney is not relevant to any claim or defense in this case.**

19. Plaintiff has received letters from other debt collectors before.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

20. When Plaintiff tried to dispute debts from the letters received from other debt collectors he called them on the phone to do it.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

21. Plaintiff "just think[s] it's easier to call on the phone and, you know, try to settle something over the phone than go in person" when trying to dispute a debt to a debt collector.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

22. Plaintiff has a tenth grade education.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

23. Plaintiff fits the profile of a least-sophisticated consumer.

    **Plaintiff's Response: Disputed and Immaterial. See Plaintiff's Response to Defendant's fact number 7. Additionally, Plaintiff disputes this fact, as it is not a fact, but an opinion by Defendant's counsel and should not be given any weight.**

24. Plaintiff can read and write.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

25. Plaintiff does not use facsimile much for himself.

    **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

26. Plaintiff cannot communicate via morse code, smoke signals, or sign language.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

27.     Plaintiff cannot remember the last time he used a facsimile for personal stuff.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

28.     Plaintiff cannot recall choosing to write something to someone instead of calling on the phone, but it would have been years ago.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

29.     Plaintiff cannot recall choosing to go talk to someone in person by getting in his car and driving to them instead of calling on the phone.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's fact number 7.**

30.     **Plaintiff's Response: Agree. Plaintiff is only alleging statutory damages.**

31.     Defendant had no intention of violating any provision of the FDCPA when it sent the Letter to Plaintiff.

**Plaintiff's Response: Immaterial. See *Moore v. Express Recovery Serv.*, 2019 U.S. Dist. LEXIS 718 (D. Ut. 2019) ("Because the least sophisticated consumer standard sets a low bar, courts label the FDCPA a strict liability statute."); see also *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (The FDCPA imposes strict liability and holds debt collectors liable for violations that are not knowing or intentional.) Furthermore, this is not a fact, but a self-serving statement of Defendant's representative.**

32.     Since its inception, Defendant has used form letters that were drafted by

its legal counsel.

**Plaintiff's Response: Immaterial. Furthermore, the statement is contradictory as Defendant purports to use "form letter", but then says that the letters were drafted by its attorney.**

33. From its inception, Defendant has strived to be compliant with the FDCPA in all aspects of its collection attempts.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's Fact number 31. Furthermore, this is not a fact, but a self-serving statement of Defendant's representative.**

34. Defendant's intention regarding the Language was to provide both written and oral ways Plaintiff could communicate with it.

**Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's Fact number 31.**

35. Defendant believes it did not commit any errors or make any violations of the FDCPA, but if the FDCPA was violated, Defendant believes that it was due to an innocent mistake on its part in sending out the letter that included the language in question without catching the allegedly offending language before sending the letter in the mail.

**Plaintiff's Response: Disputed. This statement by Defendant is an opinion. Furthermore, the explanation does not comply with a bona fide error defense as discussed in this motion as it was a mistake of law and Defendant did not employ reasonable procedures to avoid the specific errors at issue. See *Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006); see also *Johnson v. Riddle*, 296 F. Supp. 2d at 1287 (D. Utah 2003); see also *Johnson v. Riddle*, 305 F.3d at 1121 (10th Cir. 2002). (A "defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1)**

unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error.")

36.     If a violation of the FDCPA occurred, Defendant erred in its reliance upon its attorney and, through its then office manager Diana Tartaglia, erred in generating and sending a letter based upon a template that contained language that allegedly violated the FDCPA, wherein the semantics of the sentence informing account debtors how they may contact Defendant to dispute their debt is implicated. Defendant did not specify every single possible way that an account debtor could possibly try to communicate with it, for example, via smoke signals or sign language, but Defendant has accepted and honored all forms of communications by account debtors, whether in writing and emails, via facsimile, through a website contact, or orally, that constituted a dispute and that were effectively received by Defendant.

**Plaintiff's Response: Disputed. This statement by Defendant is not a fact, but an argument analyzing the facts. Plaintiff objects to this being included in the fact section of the brief and will address these arguments in the motion in their entirety, including the fact that relying on an attorney is not sufficient to satisfy the bona fide error standard, and relying on a non-attorney office manager to review legal language is not a reasonable procedure.**

37.     Defendant has both written and unwritten procedures that it follows in order to avoid any mistakes that might result in a violation of the FDCPA and to make sure it complies with FDCPA in creating form letters, generating letters based on those forms, and sending those letters to Account debtors.

**Plaintiff's Response: Disputed. As discussed below, Defendant's**

written and unwritten procedures are not reasonable and are not maintained. See Plaintiff's Response to Defendant's Fact number 35.

38. Defendant's procedures include the following:

    i. Defendant is not ignorant of the FDCPA and uses the services of an attorney to assist in providing templates for letters and other forms that require particular language or must comply with any particular law, including the FDCPA. The attorney keeps [sic] monitors changes to the law or procedure, especially those pertaining to the FDCPA, and will revise or update Defendant's forms when prudent or advisable so as to not violate any law and to otherwise be in compliance with applicable law, and he has done so in the past.

    ii. Defendant relies upon the legal services of its attorney in examining the form templates and in his revisions.

    iii. Defendant reviews changes made to documents by its attorney and only uses them when it is believed that they are legally compliant.

    iv. Defendant has written procedures that address the generation and use of form letters, including the one in question. These procedures include "Account Import Procedure: How to import accounts into Simplicity" and "Importing Accounts from Creditors," both of which are attached hereto.

    v. These written procedures were in existence and in use at the time the letter was sent to Plaintiff by Defendant's office manager.

    vi. These written procedures also address what to do when generating and sending letters. Specifically, the "Account Import Procedure: How to import accounts into Simplicity" procedure requires whoever is working the process to "Review the printed dunning

letter" and the "Importing Accounts from Creditors," which was created and used by Defendant's then office manager and who created and sent the letter sent to Plaintiff, provides for whoever is working the process, after the letter is created, to "Edit as necessary (make sure looks good to go)" and to follow the additional procedure to "ensure prior to [mail]ing: (1) Acct. # looks correct, (2) balance due is correct (3) info looks correct."

**Plaintiff's Response:   Disputed. Plaintiff agrees that Defendant alleges these are its procedures.  According to Ms. Tartaglia (a non-attorney), Defendant's office manager does not review the letters for compliance with the FDCPA. Deposition Transcript for Diana Tartaglia, former office manager for Defendant ("Exhibit F"), pg. 28-29, l. 13-7. Though Defendant has not explicitly identified an error, it is clear Defendant is implying the error was including the non-compliant language in the letter.  A mistake of law cannot qualify as a bona fide error. See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (S. Ct. 2010).**

39.     These are the procedures Defendant uses and feels are reasonably adapted to avoid making mistakes that might result in a violation of the FDCPA, including sending letters with language that might violate the FDCPA.

**Plaintiff's Response: Disputed. See Plaintiff's Response to Defendant's Fact number 38.**

40.     Since its inception, Defendant has revised or otherwise modified the language of its form letter that is the subject of this lawsuit at least eight different times. These revisions were done for the primary purpose of attempting to make them compliant with the FDCPA.

> **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's Fact number 31.**

41. One prior instance of implementing these procedures includes one occasion where it was alleged that the language in a letter Defendant used violated the FDCPA based on the stated amount of the debt. At that time Defendant's attorney investigated the claim, reviewed the all the language used in Defendant's form letter, and made revisions in the abundance of caution so as to avoid making possible errors in violation of the FDCPA.

> **Plaintiff's Response: Immaterial. See Plaintiff's Response to Defendant's Fact number 31.**

42. Within days of being served with process in this case, Defendant again amended the language in its form letters.

> **Plaintiff's Response: Plaintiff is without sufficient information to agree or disagree with this statement by Defendant. The statement tends to show that Defendant agrees its language violated the FDCPA.**

## III. STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Sometime before April 26, 2019, Plaintiff is alleged to have incurred certain financial obligations for an auto loan with Astor Brothers & Co. ("Astor"). [Astor Brothers & Co. Retail Installment Contract and Security Agreement attached hereto as "Exhibit A"; April 26, 2019 Letter sent to Plaintiff attached hereto as "Exhibit B"; Declaration of Plaintiff Francisco Rodriguez in Support of Plaintiff's Motion for Summary Judgment ("Decl. of Rodriguez"), ¶ 5].

2.      Plaintiff purchased this automobile for his own personal use. [Decl. of Rodriguez, ¶ 6].

3.      Thereafter, Plaintiff fell behind in payments owed on the debt incurred by the financial transaction. [Decl. of Rodriguez, ¶ 7].

4.      Plaintiff's account was subsequently, but before April 26, 2019, assigned to Defendant for collection purposes. [Exhibit B; Deposition Transcript of Defendant's 30(b)(6) representative, Tucker Morris' deposition, attached hereto as "Exhibit C", pg. 17, l. 12-19; pgs. 21-22, l. 25-4; pgs. 27-28, l. 2-22; Assignment Contract between Astor Brothers & Co. and Defendant attached hereto as "Exhibit D"].

5.      Defendant admits it is a debt collector. [Exhibit C, pg. 13, l. 5-9, 13-14, 19-25].

6.      The bill of sale from Astor confirms that Plaintiff's debt was an auto loan debt incurred for the Plaintiff's use in a personal capacity as opposed to on behalf of a business. [Exhibit A].

7.      Defendant admits that Plaintiff's debt for a vehicle purchase is a consumer debt.  [Exhibit A; Exhibit C, pg. 25, l. 23-25; pg. 26, l. 3-8].

8.      Defendant admits the April 26, 2019 letter was sent by Defendant in an attempt to collect $19,138.39 from Plaintiff. [Exhibit B; Exhibit C, pg. 28, l. 9-11].

9.      Defendant admits that it contacted Plaintiff in an attempt to collect a debt by sending the April 26, 2019 letter to Plaintiff. [Exhibit C, pg. 28, l. 9-22].

10.  Defendant also included the following language in its letter:

> Please pay the Amount Due. We would like to collect the Amount Due in an efficient and convenient way. If you are able to pay the Amount Due in full at once please do so. On the other hand, if you are unable to pay the amount in full at once, we are able to set up a payment plan so that the Amount Due is paid gradually over time. Please note that the Amount Due is the balance as of the date listed above and may or may not include interest, accruing interest, costs, or other fees. Please contact this office to determine how the Amount Due is calculated and to determine the balance. Exhibit B.

11.  Defendant's procedures regarding drafting the language in the letter include employing its attorney, Chad Rasmussen, to draft and review the letters for compliance with the law before they are sent. Exhibit C, pg. 32-34, l. 1-3; pg. 35-37, l 5-7.

12.  Mr. Rasmussen is also the owner of Defendant.  Exhibit C, pg. 12, l. 7-8.

13.  Neither Ms. Tartaglia nor Mr. Morris are attorneys. Exhibit C, pg. 9, l. 22-25; Exhibit F, pg. 7-8, l. 19-1.

**IV.  ARGUMENT**

**A. Motion to Dismiss**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. In ruling on defendants' motion to dismiss, the court assumes the truth of all well-pleaded facts in plaintiff's complaint and views them in the light most favorable to plaintiff. *Jensen v. Reeves*, 45 F. Supp. 2d 1265 (citing

*Zinermon v. Burch*, 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990));

*Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995). The court views all

reasonable inferences in favor of the plaintiff, and the pleadings are construed liberally.

*Id.* The court may dismiss the complaint for failure to state a claim upon which relief

can be granted only if it appears to a certainty that plaintiff can prove no set of facts in

support of its claim which would entitle plaintiff to relief. See *Conley v. Gibson*, 355

U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Cessna Aircraft*, 55 F.3d at 543.

In reviewing the sufficiency of a complaint, the issue is not whether plaintiff will

prevail, but whether plaintiff is entitled to offer evidence to support its claims. See

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).  Legal

conclusions, deductions, and opinions couched as facts are, however, not presumed to

be true. See *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976). The likelihood that the

plaintiff may or may not prevail at trial is immaterial at the time of decision on a

motion to dismiss. *Gadd by and through Gadd v. U.S.*, 971 F. Supp. 502, 505 (D. Utah

1997).

If the court chooses to dismiss the complaint, it must then decide whether to

grant leave to amend. In general, leave to amend is denied if it is clear that amendment

would be futile and the complaint's deficiencies are incurable. See *Grossman v. Novell,

Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997) (holding that if the denial to amend rests on

articulated reasons such as failure to cure deficiencies or futility of amendment the district court's decision shall stand).

### i. Plaintiff Has Article III Standing

To have standing to bring an action in federal court, the District Court examines the following three factors: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The first factor, injury in fact, is the only factor that seems to be called into question by Defendant. An injury in fact must be both particularized and concrete. *Lujan*, 504 U.S. at 560. An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d at 644. An injury is concrete if it is real and actually exists. *Id.* at 644-645. Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo* at 645. Congress has the power to enact statutes that create legal rights, "the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). "[A] plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury. *Nicklaw v. CitiMortgage, Inc.*, 2016 U.S. App. LEXIS 18206; also See *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74, 102

S. Ct. 1114, 71 L. Ed. 2d 214 (1982). The *Nicklaw* Court went on to agree with the *Spokeo* ruling and say, "intangible injuries may satisfy the Article III requirement of concreteness." *Id.*

The *Spokeo* Court also emphasized that Congress can elevate the violation of procedural rights to a concrete injury if they protect against an identified harm, and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo* at 646 (emphasis in original). Of course, "a bare procedural violation" will not give rise to an Article III injury. *Id.* However, a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right. *Lujan*, 504 U.S. at 572 n.7.

The out-of-circuit *Casillas* case cited by Defendant found that the plaintiff "must show that the violation harmed or 'presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect.'" *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019). Distinguishing the *Casillas* case, a District Court in the Tenth Circuit found "[w]ith respect to the alleged FDCPA violations at issue in this case, '[a]n overwhelming majority of courts have determined sections 1692e and 1692f of the FDCPA provide *substantive* rights to consumers,' i.e., the right to truthful and fair disclosures, not *procedural* rights like those *Spokeo, Casillas, Hagy*, and *Huff* dealt with." *Zuniga v. TrueAccord*, 2020 U.S. Dist. LEXIS 95445 (D. Nm. 2020) (citing *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1198 (M.D.

Fla. 2019) (emphasis added by *Zuniga* court)).  The *Zuniga* court further found that "Plaintiff need not allege any further harm to establish an injury in fact because she alleges violations of substantive rights under Sections 1692e and 1692f." *Id* at 18-19; See also *Cooper v. Stephen Bruce & Assocs.*, 2019 U.S. Dist. LEXIS 1013, 2019 WL 97826, at *4 (W.D. Okla.) (concluding that "where a plaintiff alleges that a defendant violated the FDCPA by including a materially misleading statement in a debt-collection letter ... she need not allege any further harm to demonstrate a concrete injury for purposes of constitutional standing")

Defendant has violated the FDCPA by including language in a letter that limits Plaintiff's and the putative class's rights in three different ways as described herein. Defendant's violations of the FDCPA constitute a concrete injury as defined by congress because congress has specifically identified these rights in the FDCPA, which are substantive rights. See *Spokeo* at 646; see also *Zuniga* at 18-19. Plaintiff need not allege additional harm beyond the statutory violations of the FDCPA. See *Id.* Furthermore, Plaintiff has pled that the language used by Defendant was confusing, which creates an appreciable risk of harm even under the non-controlling *Casillas* case cited by Defendant. See Plaintiff's Complaint, ¶¶ 27, 31-33 Therefore, Plaintiff has Article III standing and the case should not be dismissed.

**B. Motion for Summary Judgment**

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324; *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). The court must view any inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). In its inquiry, the court cannot engage in credibility determinations or weigh the evidence because these functions are reserved for the jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (S. Ct. 1986).

## C. Fair Debt Collection Practices Act

The FDCPA imposes strict liability and holds debt collectors liable for violations that are not knowing or intentional. See *Reichert v. Nat'l Credit Sys.,Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008). While the Tenth Circuit has not ruled definitively that the FDCPA is a strict liability statute, it is true that "courts generally treat the FDCPA as a strict liability statute, despite the bona fide error exception." *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171 (D. Ut. 2019); see also *Sartori v. Steider & Assocs., P.C.*, No. 1:15-CV-00991-JCH-LF, 2017 U.S. Dist. LEXIS 18803, 2017 WL 3602029, at *2 (D.N.M. Jan. 19, 2017), *report and recommendation adopted*, No. 1:15-CV-00991-JCH-LF, 2017 U.S. Dist. LEXIS 18132, 2017 WL 4542882 (D.N.M. Feb. 8, 2017) (quoting *Soren v. Equable Ascent Fin., LLC*, 2012 U.S. Dist. LEXIS 84355, 2012 WL 2317362, at *2 (D. Utah June 18, 2012). In addition, the Utah Supreme Court has just recently determined that the FDCPA is a strict liability statue. See *Gonzalez v. Kirk Cullimore, Jr. et al*, Case No. 20160373 (Utah S. Ct. 2018) ("We accordingly follow the overwhelming majority of courts and hold § 1692e claims to a strict liability standard")

### i. Materiality and the Least Sophisticated Consumer Standard

Defendant's arguments that Defendant's language in the letter in question is not material are unpersuasive. "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Moore v. Express*

*Recovery Serv.*, 2019 U.S. Dist. LEXIS 718 (D. Ut. 2019) (citing *Jensen v. Pressler &*

*Pressler*, 791 F.3d 413, 421 (3d Cir. 2015)). "Material false statements, we have held,

are those that could "cause the least sophisticated debtor to suffer a disadvantage in

charting a course of action in response to the collection effort." *Afewerki*, 2015 U.S.

Dist. LEXIS 186253 (9th Cir. 2017) (citing *Tourgeman v. Collins Fin. Servs., Inc.*, 755

F.3d 1109, 1121 (9th Cir. 2014)). Furthermore, courts have found that when there is a

violation of an enumerated section of the FDCPA that would mislead the least

sophisticated consumer, then the violation is clearly material. *Donohue v. Quick*

*Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010).

      The statute is liberally construed to protect the "least sophisticated consumer."

*Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1171 (9th Cir.

2006).   This standard has been adopted by all federal appellate courts that have

considered the issue.  *See Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1028 (6th

Cir. 1992); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir. 1991); *Jeter v. Credit*

*Bureau, Inc.,* 760 F.2d 1168, 1174-74 (11th Cir. 1985); *Baker v. G.C. Services Corp.,*

677 F.2d 775, 778 (9th Cir. 1982).  *See also Guerrero v. RJM Acquisitions, LLC*, 499

F.3d 926, 934 (9th Cir. 2007) ("If the least sophisticated debtor would 'likely be

misled' by a communication from a debt collector, the debt collector has violated the

Act.").  This objective standard will ensure that the FDCPA protects all consumers, the

gullible as well as the shrewd, the ignorant, the unthinking and the credulous.  *Clark,*

634 F.Supp.2d at 1171 (citing *Clomon v. Jackson,* 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

Here, all three of Defendant's violations are material and would confuse the least sophisticated consumer. First, Defendant included contradictory time periods in which Plaintiff had to dispute the alleged debt at issue. This contradicting language would surely cause a disadvantage in charting a course of action in response to the collection effort because the consumer would not know how much time he or she had to dispute the debt. See *Tourgeman* at 1121.

Second, Defendant included language that limited the methods by which Plaintiff could dispute. Again, this would influence Plaintiff's decision regarding deciding how to respond to the collection letter. See *Moore* at 7.

Third, Defendant included language that was confusing as to whether or not additional costs and interests were being included in Plaintiff's principal balance. A debt collector defendant who filed a complaint in state court to collect an unpaid credit card debt, and "overstated both the debtor's principal due and the applicable interest rate" had made a material false statement pursuant to the FDCPA. *Afewerki v. Anaya Law Group*, 868 F.3d 771 (9th Cir. 2017). "False statements made by the debt collector in this case were material because they could have disadvantaged a hypothetical debtor in deciding how to respond to the complaint." *Id.* Defendant's failure to provide an accurate accounting was material because it would disadvantage the least sophisticated

consumer in deciding how to respond to the collection letter. See *Id*. Plaintiff's three claims are discussed in more detail below.

Defendant cites to several cases in support of its materiality argument that had very distinct facts from the situation here.[1] Furthermore, Defendant attempts to conflate Plaintiff with the least sophisticated consumer. See Defendant's Motion to Dismiss, or Alternatively, For Summary Judgment ("Defendant's MSJ"), pg. 26. To be clear, the least sophisticated consumer is a standard that deals with an objective hypothetical consumer, not the Plaintiff in this case. See *Clark* at 1171. Therefore, Defendant's arguments regarding whether Plaintiff was confused or not are irrelevant because the standard is an objective one. *Id.* Furthermore, the violation is regarding the language in the letter, not Plaintiff's reaction to the language in the letter. Even if Plaintiff's reactions were relevant, Plaintiff was confused by the misleading language in the letter. See Declaration of Plaintiff Francisco Rodriguez in Support of Plaintiff's Motion for Summary Judgment "Plaintiff's Decl." (ECF # 17-1), ¶¶14-18.

---

[1] *Jensen* involved the use of a subpoena with the Court Clerk's name left off of the subpoena. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 415 (3rd Cir. 2015). In *Shimek*, the defendant debt collector used language consistent with the FDCPA in its collection letter stating the consumer had 30 days to dispute from the date of receipt of the letter. *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp.2d 1344 (N.D. Ga. 2003).

### ii. Defendant Violated the FDCPA in Three Different Ways under the Least Sophisticated Consumer Standard

#### 1. Defendant Limited Plaintiff's Time Frame to Dispute

The first violation identified in Plaintiff's Motion for Summary Judgment involves contradictory confusing statements by Defendant in the letter regarding the time Plaintiff has to dispute. Sections 15 U.S.C. § 1692g(a)(3), § 1692g(a)(4), and § 1692g(a)(5) allow a consumer to dispute the debt "within thirty days after receipt of the notice." However, Defendant provides contradictory requirements, one of which is false. On one hand, Defendant's letter tells consumers that they have the right to dispute the debt within thirty days from receipt of the notice. Contradictorily, Defendant's letter later informs the consumers that they have the right to dispute the debt within 30 days of the "date of this letter." See Exhibit B. This statement by Defendant deprives Plaintiff of multiple extra days to dispute by the amount of time it took for the letter to get to Plaintiff from Defendant. False, deceptive, or misleading representations or means in connection with the collection of a debt like this violate 15 U.S.C. § 1692g, and 15 U.S.C. § 1692e and § 1692e(10).

Further, by telling Plaintiff that he can dispute the debt "within thirty days after receipt of the notice" in one portion of the letter and then saying the dispute can be within 30 days of the "date of this letter", Defendant is overshadowing the notice as prohibited by 15 U.S.C. § 1692g(b). *See* Exhibit B; see also *Philhower v. Express*

*Recovery Servs.*, 2014 U.S. Dist. LEXIS 57262 (D. Ut. 2014) ("any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. Collections activities 'overshadow' the notice when the activities are likely to confuse the 'least sophisticated consumer' regarding the rights to request the additional information or to dispute the validity of the debt."). This is confusing as "thirty (30) days after receipt of the notice" and thirty (30) days from "the date of this letter" are two different time periods. *Id.*, ¶ 16. See also *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) ("it is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'")

Similarly, every Court of Appeals to have addressed the issue has held that where statements in a collection communication can plausibly be read in two or more ways, at least one of which is false or misleading, the FDCPA is violated. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996); *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (violation if communication "can be reasonably read to have two or more different meanings, one of which is inaccurate"); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *See also Mashiri v. Epsten Grinnell & Howell,* 845 F.3d 984, 990 (9th Cir. 2017) (Defendant's notice requested payment by a date that was inconsistent

with a debtor's right to dispute the debt within thirty days from receipt of the notice violates the FDCPA.)

Finally, Defendant cites to only two cases in its Motion for Summary Judgment that address section 15 U.S.C. § 1692g(a)(3). The first case is *Meininger*, which included the following language in its collection letter:

> UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER YOUR RECEIPT OF GC SERVICES' INITIAL WRITTEN NOTICE TO YOU CONCERNING THIS DEBT, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY GC SERVICES.

*Meininger v. GC Servs. Ltd. P'ship (In re Hathcock)*, 437 B.R. 696 (M.D. Fla. 2010). The language in *Meininger* was found to be sufficient because it included the language "after your receipt of GC Services' initial written notice" without any additional conflicting language in the letter. Here, Defendant's language is different. Defendant's language limits the time period for which Plaintiff has to dispute from "the date of this letter". Exhibit B. Defendant goes on to provide a different deadline in a subsequent sentence in the same paragraph that identifies the deadline as "within 30 days of receiving this notice." *Id.* These are two contradictory statements and distinguishable from *Meininger*.

The other case cited by Defendant is *Shimek*, which included the following language under 15 U.S.C. § 1692g(a)(3): "[y]ou have thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it." *Shimek v. Weissman,*

*Nowack, Curry & Wilco, P.C.*, 323 F.Supp.2d 1344 (N.D. Ga. 2003).  This language can easily be differentiated from Defendant's notice here because it includes the language, "after you receive this letter" without any further contradictory statements.

Therefore, Defendant has failed to provide any case law that supports its position that the language used was not a violation of 15 U.S.C. § 1692g(a)(3).

### 2.   Defendant Limited Methods by Which to Dispute

The next violation by Defendant involves Defendant limiting the methods by which Plaintiff could dispute the alleged debt to telephone and mail.[2]  As many courts have held, 15 U.S.C. § 1692g(a)(3) allows a consumer to dispute the debts in any manner.  For example, the debt collector may not restrict communications to an "in writing" requirement or any other requirement when it comes to 15 U.S.C. § 1692g(a)(3).  Here, Defendant is stating that Plaintiff had to dispute the debt "in writing" or "by calling" and nothing more.  The letter leaves no other options, but § 1692g(a)(3) provides for any means, and Defendant's letter necessarily excludes other means, such as through email, which Defendant provides as "contact@utahdebtcollector.com" but Defendant will not accept a dispute through this means, through Defendant's web form, which Defendant provides as http://utahdebtcollector.com/contact-us/ but Defendant will also not accept a dispute

---

[2] In Defendant's collection letter, it allowed for two ways to dispute the debt, by phone and by mail. See Exhibit B. Defendant provided only a phone number and a mailing address to where disputes could be made. *Id.*

through this means. Defendant excludes communicating with Defendant through many other means of communication other than in writing and phone, (i.e. - in person, telegram, facsimile, etc.).

In a similar case in the Ninth Circuit, the Court found that limiting the methods for contacting a debt collector in the § 1692g(a)(3) notice was a violation of the FDCPA. *See Camacho v. Bridgeport Fin., Inc.,* 430 F.3d 1078 (9th Cir. 2005). In *Camacho*, the defendant debt collector sent an initial debt collection notice to the plaintiff that included the following language:

> Unless you notify this office *in writing* within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. [emphasis added].

*Id.* at 1079.

The *Camacho* court found this language to be incompatible with § 1692g(a)(3) because the plaintiff could have communicated a dispute in a different manner. *Id*. Furthermore, the only court in the Tenth Circuit to opine on this issue agreed with the *Camacho* court. Specifically, an Oklahoma Northern District Court found "the Court finds that such a violation presents a material risk of harm to the concrete interests Congress intended to protect." *Hargis v. Equinox Collection Servs*., 2019 U.S. Dist. LEXIS 92336 (N.D. Ok. 2019).

The Ninth Circuit in *Camacho* observed that the FDCPA "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in

writing." *Camacho* at 1082. "The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." *Welker v. Law Office of Daniel J. Horwitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010).

Here, it is undisputed that Defendant averted from the language of the FDCPA. See Exhibit B. Through the language in the collection letter to Plaintiff, Defendant limited the ways Plaintiff could dispute the debt, thus violating the FDCPA. Plaintiff could have sent an email, a facsimile, or even disputed the debt in-person based on the plain language of § 1692g(a)(3). However, Defendant's letter included language that did not comport with the FDCPA and would have confused the least sophisticated debtor as to the methods by which the consumer could have disputed a debt. Therefore, based on the plain language of § 1692g(a)(3) and the supporting case law, Defendant's language in its April 26, 2019 collection letter violates § 1692g(a)(3) of the FDCPA.

Defendant only cites three cases in support of its position. The first case is *Caprio*, which involved a completely different set of facts than the instant case. *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 152 (3rd Cir. 2013). At the time the Third Circuit decided *Caprio*, the Third Circuit law only allowed for a dispute to be in writing to be effective. See *Graziano and Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000). Defendant points out in its motion that *Graziano* was later

overturned by *Riccio v. Sentry Credit, Inc. Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3rd Cir. 2020). In *Riccio*, the Third Circuit found that 15 U.S.C. 1692g(a)(3) "provides debtors multiple methods to dispute debts while assigning various rights depending on the method." *Id.* at 589. The Third Circuit in *Caprio* found in part that the language in the letter was misleading because it included two methods of dispute including via telephone calls and mail, and telephone calls were not effective in the Third Circuit. *See Caprio* generally. Since *Caprio*, there has been a significant amount of case law supporting the fact that other methods of dispute are effective as well. See *Camacho* at 1078; see also *Hargis*.

The next case Defendant cites in support of its argument is *Jolly*, which, again, is in the Third Circuit and during a time in which the Third Circuit only allowed a dispute in writing to be effective. *Jolly v. Shapiro*, 237 F.Supp 2d 888 (N.D. Il 2002). Defendant's argument is unclear (Defendant's argument and case law do not follow its conclusion), but it seems as if Defendant is attempting to use *Jolly* and the third unpublished case *Nasca* to argue that Defendant did not need to provide a telephone number to Plaintiff in the letter in question. See *Jolly* at 895; see also *Nasca v. GC Servs. Ltd. P'ship*, No. 01-CIV-10127, 2002 WL 31040647 (S.D. NY 2002). This is not a relevant issue to the instant case as Plaintiff's claim is regarding the limiting of Plaintiff's methods to dispute the debt. Therefore, Defendant has failed to provide any

valid support for its argument that it did not violated the FDCPA by limiting the methods by which Plaintiff could dispute.

### 3. Defendant Did Not Provide An Accurate Balance of Debt

When Congress designed the FDCPA, "[i]t added the validation of debts provision [under 15 U.S.C. § 1692g] specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988), citing S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699. Section 1692g(a)(1) provides that a debt collector must provide the consumer with "the amount of the debt" in its initial communication with the consumer. The initial communication with Plaintiff here failed to provide Plaintiff with the "the amount of the debt." *See* Exhibit B.

The first element of the debt verification notice required by § 1692g is "the amount of the debt." 15 U.S.C. § 1692g(a)(1). There is concern that some collectors determine the amount of any additional charges according to the consumer's gullibility rather than by using an even-handed policy. The result may be that sophisticated consumers negotiate lower fees than other, less sophisticated consumers, but those who can least afford these additional charges pay more than others and must neglect basic necessities to do so.

Case after case has demonstrated the obvious; The "amount of the debt" means everything that is allegedly owed by the consumer, not just a portion. Because Defendant fails to provide that amount in its initial communication with Plaintiff, Defendant violates 15 U.S.C. § 1692g(a)(1). The leading case on the issue before the Court is Judge Posner's decision in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), a case that is factually similar to the case here. In *Miller*, the debt collector demanded the "unpaid principal balance" (italics are Judge Posner's) and added, "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges…" *Id*. at 875. The Seventh Circuit held that such a statement is inadequate under the FDCPA. "The statement does not comply with the Act … the unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id. See also*, *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002) ("Although the text of § 1692g does not explicitly provide that the disclosures required by it must be made in a non-confusing manner, courts have held that the statute implies that the required disclosures be set forth in a form and within a context that does not distort or obfuscate its meaning.)

Here Defendant states that the "Amount Due: [is] $19,138.39". However, in the subsequent paragraph the letter states, in the last sentence, "Please note that the Amount Due is the balance as of the date listed above and may or may not include

interest, accruing interest, costs, or other fees. Please contact this office to determine how the Amount Due is calculated and to determine the balance." See Exhibit B; Plaintiff Decl., ¶ 14. By telling Plaintiff that "the balance as of the date listed above **may or may not** include interest, accruing interest, costs, or other fees" (Bold emphasis added), Defendant is not really telling Plaintiff anything useful. It is merely telling Plaintiff he allegedly owes $19,138.39 plus an unknown amount that **may or may not** include additional amounts as "the balance as of the date listed above", which is not accurate. Defendant confirms this by telling Plaintiff that if Plaintiff wishes to "determine the balance" Plaintiff must "contact this office to determine how the Amount Due is calculated and to determine the balance." *See* Exhibit B.

In *Carlin v. Davidson Fink L.L.P.*, the Second Circuit similarly found the foreclosure law firm's statement of the amount of debt was inadequate where there were accruing fees:

> We do not hold that a debt collector may never satisfy its obligations under § 1692g by providing a payoff statement that provides an amount due, including expected fees and costs. But a statement is incomplete where, as here, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase."

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017). In *Veach v. Sheeks,* the court held that "When there are two different accounts of what a debtor actually

owes the creditor, that one version is the correct description does not save the other …
under the unsophisticated debtor standard…" *Veach v. Sheeks,* 316 F.3d 690, 693 (7th
Cir. 2003)

Here Defendant is not telling consumers "the amount of the debt." Defendant is
instead telling consumers a figure that "may or may not include additional amounts"
and then tells the consumer to call them for clarification.  This violates the FDCPA, a
strict liability statute.

Defendant only cites two cases in support of its argument regarding the
misleading statements regarding the amount of debt. The first case, *Wahl*, can be easily
distinguished. *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643 (7th Cir. 2009). In *Wahl*,
the debt collector defendant sent two collection letters to the plaintiff indicating a
current principal balance and additional interest amounts. *Id.* at 644. Here, Defendant
provided a principal amount, and then a statement that it "may or may not include
additional amounts."  Defendant's ambiguous statement is clearly distinguishable from
*Wahl*.  The second case Defendant cites in support of its argument under 15 U.S.C. §
1692g(a)(1) is *Carlin*, which supports Plaintiff's position here because the statements
made in the correspondence did not allow Plaintiff to "determine the minimum amount
[he] owes at the time of the notice." *Carlin* at 207.

### iii.    Defendant's Bona Fide Error Defense Fails

Defendant does not have a valid bona fide error defense mainly because it is claiming the error was a mistake of law.    A "defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006); see also *Johnson v. Riddle*, 296 F. Supp. 2d at 1287 (D. Utah 2003); see also *Johnson v. Riddle*, 305 F.3d at 1121 (10th Cir. 2002).

Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests. See *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 933 (N.D. Ind. 2004); *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d 1257-58, 1255 (D. Kan. 2003); *Shapiro v. Haenn*, 222 F. Supp. 2d 29, 43 n.8 (D. Me. 2002); *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002); *Edwards v. McCormick*, 136 F. Supp. 2d 795, 801 n.8 (S.D. Ohio 2001).

As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector "maintained"--i.e., actually employed or implemented--procedures to avoid errors; and, second, whether the procedures were "reasonably adapted" to avoid the specific error

at issue. See 15 U.S.C. § 1692k(c); see also *Jenkins v. Heintz*, 124 F.3d 824, 834, 835 (7th Cir. 1997) (finding debt collector conclusively established procedures prong where the debt collector actually employed both general procedures to comply with the FDCPA and specific procedures designed to avoid the error at issue); *Frye v. Bowman*, 193 F. Supp. 2d 1070, 1088-89 (S.D. IN 2002) (finding procedure prong satisfied based on debt collector's unrebutted evidence that it maintained both general and specific procedures).

Here, there are multiple problems with Defendant's alleged bona fide error defense.

### 1. Mistake of Law is Not a Bona Fide Error

Defendant alludes to the "error" committed by Defendant having to do with drafting the incorrect language in the letter that did not comply with the FDCPA. *See Defendant's MSJ*, pg. 29. This is a mistake of law, and as a result, the "error" was intentional under the bona fide error defense. The United States Supreme Court in *Jerman* found that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (S. Ct. 2010). The Supreme Court further analyzed that "[w]e have long recognized the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Id.* at 581

citing *Barlow* v. *United States*, 32 U.S. 404, 7 Pet. 404, 411, 8 L. Ed. 728 (1833) (opinion for the Court by Story, J.). "Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." *Jerman* at 583 citing *Kolstad* v. *American Dental Assn.*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999).

Courts have further clarified the mistake of law defense to bona fide error:

> Since proof of intent is not necessary to establish an FDCPA violation, Defendants may not shoehorn an advice-of-counsel defense into the statute. Mistake of law is explicitly excluded from the bona fide error defense. In addition, attorneys have been found not to be exempt from liability for FDCPA violations under a litigation exemption.

*Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Ca. 2000).

Defendant's procedures regarding drafting the language in the letter includes employing its attorney, Chad Rasmussen, to draft and review the letters for compliance with the law before they are sent. Exhibit C, pg. 32-34, l. 1-3; pg. 35-37, l 5-7. Incidentally, Mr. Rasmussen is also the owner of Defendant. *Id.* at pg. 12, l. 7-8. According to Defendant, Defendant's procedures subsequently involve Defendant's office manager reviewing the letters to see if the correct contact information for consumers is included. *Id.* at pg. 33, l. 8-22. According to Defendant, Defendant's office manager will review to see if the language in the letter complies with the law. *Id*.

Neither Ms. Tartaglia nor Mr. Morris are attorneys. Exhibit C, pg. 9, l. 22-25; Exhibit F, pg. 7-8, l. 19-1.

### 2. There Was not An Error

Defendant has not admitted or identified an error that led to including the violating language in the error. In fact, Defendant's Fed. R. Civ. P. 30(b)(6) witness, Tucker Morris, gave contradictory and confusing testimony on the subject. First, Mr. Morris testified there was not an error made in regards to the letter. Exhibit C, pg. 31, l. 19-25. Then, when questioned by his own attorney, Mr. Morris retracted his previous statement and testified there was an error and the error was the fault of Diana Tartaglia, the former office manager for Defendant. Exhibit C, pg. 55, l. 1-12. Finally, when pressed by Plaintiff's counsel, Mr. Morris testified that *if* there was a violation of the FDCPA, *then* there was an error. Exhibit C, pg. 63, l. 8-21. However, if there was *not* a violation of the FDCPA, then there was *not* an error made by Defendant. *Id*. In order to have a bona fide error defense, Defendant must identify an error, and in turn, admit to a violation. *See Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008) (An **identified** error must be 'objectively bona fide,' which the Eighth Circuit has clarified means 'plausible and reasonable,' and must have been 'made despite the use of procedures reasonably adapted to prevent that specific error.') [bold emphasis added]. Defendant's head-spinning testimony demonstrates not only its

misunderstanding of the bona fide error defense, but more importantly its willingness to say anything to avert liability.

### 3. Defendant Did not Maintain Reasonable Procedures

Plaintiff's counsel subsequently deposed Diana Tartaglia, the former office manager for Defendant. Ms. Tartaglia testified that in her capacity as office manager, it was *not* in her job description to review the letters to see if they complied with the law. Exhibit F, pg. 25-26, l. 11-1. Ms. Tartaglia further denied that she had made an error in sending out the letter to Plaintiff. *Id.* at pg. 28-29, l. 13-7. Ms. Tartaglia also testified that in her capacity as office manager, Defendant had never asked her to review the language in the letter except for the purpose of confirming contact information for consumers. *Id.* at pg. 25, l. 11-25. Therefore, even if mistake of law were allowed to be used in support of a bona fide error (which it should not be), Defendant still failed to maintain the procedures described by Defendant's 30(b)(6) representative because Ms. Tartaglia was not directed to review the letter at issue. *Id.* Additionally, Defendant's procedure that an office manager without a law degree reviews language to make sure it complies with the FDCPA is not reasonably adapted to avoid specifically alleged violating language in the letters. Therefore, Defendant's alleged procedures were not reasonably adapted. Additionally, the procedures were not followed.

Moreover, Defendant was not able to provide a procedure for how often the collection letters should be reviewed by its attorney. Exhibit C, pg. 33-34, l. 8-15. The last time that Mr. Rasmussen had reviewed the particular template for the collection letter that was sent to Plaintiff was in January of 2018, nearly a year and a half before the letter was sent to Plaintiff on April 26, 2019. *Id.* at pg. 34-35, l. 16-4. Thus, the procedures described by Defendant are not reasonable.

## V.    CONCLUSION

Defendant's out-of-circuit support for Plaintiff not having Article III standing is not persuasive considering the decisions within and outside of the Tenth Circuit provided by Plaintiff. Further, Defendant's case law provided in support of its sometimes confusing arguments are all distinguishable from the facts here. Moreover, the identified violations by Plaintiff are unmistakably material and clearly would be confusing to the least sophisticated consumer under the objective standard. Finally, a mistake of law is not a valid bona fide error defense, and even if it was, Defendant has not shown evidence of the maintenance of reasonably adapted procedures to avoid the alleged error here.  Therefore the Court should deny Defendant's Motion to Dismiss and Motion for Summary Judgment, and grant Plaintiff's Motion for Summary Judgment.

Dated: August 28, 2020    **KAZEROUNI LAW GROUP, APC**

By: /s/ Ryan L. McBride
    Ryan L. McBride, Esq.
    *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *Plaintiff's Response to Defendant's Motion to Dismiss or alternatively for Summary Judgment* has been filed this 28th day of August 2020, through the Court's electronic filing system.  All parties may access the foregoing via the Court's electronic filing system.

By: /s/ Ryan L. McBride
Ryan L. McBride, Esq.