FILED
2021 MAR 31 AM 11:51
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRANCISCO RODRIGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>CASCADE COLLECTIONS LLC,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS, DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART CASCADE'S MOTION FOR SUMMARY JUDGMENT, DENYING RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION<br><br>Case No. 2:20-cv-00120-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court are: (1) defendant Cascade Collections, LLC's motion to dismiss; (2) Cascade's motion to strike; (3) Cascade's motion for summary judgment, (4) plaintiff Francisco Rodriguez's motion for summary judgment; and (5) Rodriguez's motion for class certification. The court DENIES Cascade's motion to dismiss, DENIES Cascade's motion to strike, GRANTS IN PART and DENIES IN PART Cascade's motion for summary judgment, DENIES Rodriguez's motion for summary judgment, and GRANTS IN PART and DENIES IN PART Rodriguez's motion for class certification.

## BACKGROUND

Rodriguez took out a loan to purchase a truck. He fell behind on his payments, and his account was referred to Cascade for collections. Cascade mailed a letter to Rodriguez in an attempt to collect the debt. At the top of the letter, Cascade listed the account number for the auto loan.

Just below the account number, appeared the following: "Amount Due: $19,138.39." The body of the letter stated in part:

> If you dispute the validity of this debt or any part of it, you must notify us either by writing to Cascade Collections LLC, P.O. Box 970547, Orem, UT 84097, or by calling toll-free 855-978-7184 or locally (801) 900-3328 within thirty (30) days of the date of this letter; otherwise we will consider this debt to be valid and proceed accordingly. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and will mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

> Please pay the Amount Due. We would like to collect the Amount Due in an efficient and convenient way. If you are able to pay the Amount Due in full at once please do so. On the other hand, if you are unable to pay the amount in full at once, we are able to set up a payment plan so that the Amount Due is paid gradually over time. Please note that the Amount Due is the balance as of the date listed above and may or may not include interest, accruing interest, costs, or other fees. Please contact this office to determine how the Amount Due is calculated and to determine the balance.

Rodriguez sued Cascade, alleging that the collection letter violated the Fair Debt Collection Practices Act (FDCPA). The complaint quoted the portion of the letter stating that if Rodriguez wished to dispute the validity of the debt, he had to notify Cascade by either mailing a letter to the address provided or calling one of the two telephone numbers listed in the letter. The complaint alleged that "Defendant's notice limits the methods for Plaintiff to contact Defendant to a letter through the mail or a phone call. 15 U.S.C. 1692g(a)(3) allows for Plaintiff to notify Defendant through other reasonable means such as facsimile or even in person." Rodriguez asserted that this portion of the letter violated § 1692e, § 1692f, and § 1692g of the FDCPA. Rodriguez also

requested the certification of a class action lawsuit for individuals who received letters from Cascade that were substantially similar to the letter that he received.

Rodriguez filed his complaint on February 21, 2020. The court entered a scheduling order setting a May 29, 2020 deadline to file amended pleadings. The scheduling order also set a September 14, 2020 deadline to complete fact discovery. On July 16, 2020, Rodriguez filed a motion for summary judgment and a motion for class certification. In the motion for summary judgment, Rodriguez raised new theories of liability for statements made in the collection letter. First, Rodriguez pointed out one sentence in the letter stated that he had 30 days from the date of the letter to dispute the debt, while two other sentences stated that he had 30 days from the date he received the letter to dispute the debt. Rodriguez argued that this internal inconsistency violated the FDCPA. Second, Rodriguez argued that the following statement violated the FDCPA: "Please note that the Amount Due is the balance as of the date listed above and may or may not include interest, accruing interest, costs, or other fees." He asserted that this equivocating statement made it impossible for him to know the true amount of the debt.

On July 31, 2020, Cascade filed a motion to dismiss Rodriguez's claims for lack of standing or, in the alternative, for summary judgment. On the same day, Cascade also filed a motion to strike the two new claims raised in Rodriguez's motion for summary judgment.

## ANALYSIS

### I.   CASCADE'S MOTION TO DISMISS

Cascade moves to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this court lacks subject-matter jurisdiction over Rodriguez's claims. Cascade argues that the court lacks subject-matter jurisdiction because Rodriguez does not possess Article III standing to sue. It contends that Rodriguez alleges only a "bare procedural violation" of

the FDCPA. Without further alleged harm, Cascade argues, such a violation does not constitute an injury-in-fact necessary to confer standing on Rodriguez. Rodriguez responds that Cascade's alleged behavior constitutes more than a "bare procedural violation" of the FDCPA because the provisions of the FDCPA that Cascade allegedly violated are intended to protect debtors' substantive rights. Rodriguez further responds that even if the provisions in question only establish procedural requirements, Cascade's violations created the "appreciable risk of harm" necessary for Article III standing where a defendant violates a procedural, rather than substantive, statutory right.

"Article III of the Constitution permits federal courts to decide only 'Cases or 'Controversies.'" *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citing U.S. Const. art. III, § 2). "To establish a case or controversy, a plaintiff must possess standing to sue." *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). To have Article III standing to sue, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1547). The plaintiff "bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547. At the motion-to-dismiss stage, courts look to the well-pleaded allegations of the complaint to determine whether a plaintiff has met this burden. *Id.*

Cascade does not dispute that Rodriguez has satisfied the second and third elements above; rather, it argues that he has not suffered an "injury in fact." Specifically, Cascade contends that Rodriguez has not alleged a concrete injury because he did not allege any harm beyond a mere procedural violation of the FDCPA. "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Kan. Nat. Res.*, 971 F.3d at 1231 (quoting

4

*Spokeo*, 136 S. Ct. at 1548). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). To be "concrete," an injury "must be '*de facto*'; that is, it must actually exist." *Id.* at 1549. But concrete is not synonymous with "tangible"; "intangible injuries can [ ] be concrete." *Id.*

The parties agree that the Supreme Court's decision in *Spokeo* is instructive in this case. In that case, the plaintiff, Robins, alleged that Spokeo, an alleged consumer reporting agency, violated the Fair Credit Reporting Act (FCRA) by publishing false information about him on its website. *Id.* at 1546. Robins did not allege any injury beyond the violation of the FCRA; i.e., he did not allege that the false information caused him reputational harm or prevented him from employment opportunities. Because of this, the district court dismissed the case, reasoning that he had not alleged an injury in fact. *Id.* at 1546. The Ninth Circuit reversed, reasoning that Robins had pled that "Spokeo violated *his* statutory rights" and that his "personal interests in the handling of his credit information [were] individualized." *Id.*

The Supreme Court vacated and remanded, explaining that the Ninth Circuit only analyzed the "particularized" prong of the injury-in-fact test, not the "concreteness" prong. *Id.* at 1550. As explained above, intangible injuries may qualify as "concrete." In determining whether an intangible harm constitutes a concrete injury, the Supreme Court instructed:

> [B]oth history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, . . . Congress may "elevat[e] to the status of legally cognizable

> injuries concrete, de facto injuries that were previously inadequate
> in law."

*Id.* at 1549. (citations omitted). The Court also explained, however, that

> Congress' role in identifying and elevating intangible harms does
> not mean that a plaintiff automatically satisfies the injury-in-fact
> requirement whenever a statute grants a person a statutory right and
> purports to authorize that person to sue to vindicate that right. Article
> III standing requires a concrete injury even in the context of a
> statutory violation. For that reason, Robins could not, for example,
> allege a bare procedural violation, divorced from any concrete harm,
> and satisfy the injury-in-fact requirement of Article III.

*Id.* The Court gave as an example of a bare procedural violation the dissemination of an incorrect

zip code in one's credit report. *Id.* at 1550. The court reasoned that without more, such an act likely

could not "work any concrete harm." *Id.*

The Court clarified that "the real *risk* of harm" may satisfy the requirement of concreteness.

*Id.* at 1549 (emphasis added). Thus, in cases where a procedural violation presents an appreciable

risk of harm, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has

identified." *Id.* The Court summarized its reasoning in two principles: "On the one hand, Congress

plainly sought to curb the dissemination of false information by adopting procedures designed to

decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging

a bare procedural violation. A violation of one of the FCRA's procedural requirements may result

in no harm." *Id.* at 1550.

In a well-researched opinion, a Middle District of Florida court surveyed numerous circuit

and district court opinions that have applied *Spokeo*'s standing analysis to cases in which the

plaintiff sued for a violation of a statutorily created right. *See Gause v. Med. Bus. Consultants*, 424

F. Supp. 3d 1175, 1193 (M.D. Fla. 2019). The *Gause* court distilled these courts' decisions into a

rule: A court must first determine if the statutory provision in question "is procedural in nature or

whether it confers substantive rights on the plaintiff." *Id.* at 1197. If procedural, then a violation must create actual harm or an appreciable risk of harm to the interests Congress intended to protect by enacting the statute. *Id.* If substantive, then the plaintiff need not allege further harm because the violation of the substantive right itself constitutes a concrete injury in fact. *Id.* at 1197–98; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (explaining that an injury in fact "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" (citation omitted)); *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 141 (E.D.N.Y. 2016) ("[T]here is a meaningful distinction between the direct violation of a specific statutory interest that Congress has recognized . . . and an ancillary procedural infraction that may or may not materially harm that interest. The former, if sufficiently alleged, establishes concrete injury for purposes of Article III, whereas the latter, under *Spokeo* . . . requires a 'real risk of harm' to the underlying right to ensure that the plaintiff does not seek relief for a 'bare procedural violation' that is not constitutionally cognizable.")).

Here, Rodriguez asserts that Cascade violated 15 U.S.C. §§ 1692e, 1692f, & 1692g by informing Rodriguez he had thirty days from the date of the letter to dispute the debt, rather than 30 days from receipt of the letter, by limiting the methods through which Rodriguez could dispute the validity of the debt, and by failing to inform Rodriguez with certainty the amount he owed. The court must therefore determine whether these allegedly violated provisions create substantive or procedural rights. As the *Gause* court noted, there is not always a clear line between those statutory provisions that are procedural in nature and those that confer substantive rights on plaintiffs. 424 F. Supp 3d at 1190–91. The court first considers § 1692e and  § 1692f, then turns to § 1692g.

A.      *§ 1692e and § 1692f*

Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also provides in § 1692f that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. The vast majority of courts to consider this issue have concluded that § 1692e and § 1692f create substantive rights. *See Gause*, 424 F. Supp. 3d at 1198 (collecting cases). This court agrees.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, Congress intended to confer a substantive right on consumers by ensuring they are free from abusive debt collection practices. By prohibiting false, deceptive, and unfair means of collecting debts, § 1692e and § 1692f strike at the core of that purpose. They do not prescribe procedures with which debt collectors must comply; rather, they proscribe certain behaviors Congress considered to be abusive debt collection practices. Further, the practices outlined in these sections resemble behavior that would be actionable as fraud under the common law. *See Spokeo*, 136 S. Ct. at 1549 ("[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."). Thus, the court concludes that § 1692e and § 1692f confer substantive rights on plaintiffs, namely, the right to be free from false or unfair debt

collection practices, and that a violation of these sections therefore constitutes a concrete injury-in-fact, even without an allegation of further harm.[1]

  *B.*  *§ 1692g*

  As opposed to § 1692e and § 1692f, § 1692g(a), the provision at issue here, provides a list of procedures with which debt collectors must comply when communicating with a consumer regarding the collection of a debt:

  **(a) Notice of debt; contents**

  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

  (1) the amount of the debt;

  (2) the name of the creditor to whom the debt is owed;

  (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

  (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

  (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

---

[1] Whether Cascade's language in the letter actually amounted to a violation of § 1692e or § 1692f is irrelevant for the purposes of determining standing.

15 U.S.C. § 1692g(a). While Congress no doubt imposed these procedural requirements in order to safeguard the substantive rights the FDCPA is intended to protect, noncompliance with one of these requirements will not necessarily result in a violation of those rights. For example, a small typographical error in the name of a creditor is unlikely to "work any concrete harm." *Spokeo*, 136 S. Ct. at 1550. The court concludes, therefore, that § 1692g is procedural in nature.

Because § 1692g is procedural in nature, whether a violation of the section constitutes a concrete injury-in-fact turns on whether the violation in question created a "real *risk* of harm." *Id.* at 1549. The court concludes that the violations in question here did create a real risk of harm. Violations of the sort alleged by Rodriguez pose the risk of confusing debtors as to the amount of their debt, the method by which they are to contact Cascade, and the date by which they must contact Cascade. This places them at a risk of forfeiting their statutory right to dispute the debt and require verification from the debt collector. *See* 15 U.S.C. § 1692g(b).

Cascade contends that Rodriguez in fact contacted Cascade by phone and made no attempt to contact Cascade by some other method. But Cascade focuses on the actual harm to Rodriguez; as explained above, the relevant inquiry is not only whether Rodriguez actually suffered harm, but whether Cascade's procedural violation created an appreciable risk that he would suffer harm. *See Spokeo*, 136 S. Ct. at 1549. Even if Rodriguez himself preferred to contact Cascade by phone, some debtors may prefer or only be able to do so through online form, email, fax, or in-person visit. Cascade did not know *ex ante* that Rodriguez was not such a debtor.

Cascade cites two cases in support of its argument that Rodriguez lacks standing: *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), and *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019). Both are unavailing. In *Hagy*, the court found that the plaintiffs lacked standing because they alleged a bare procedural violation. But the letter in question in that

case simply informed the plaintiffs that the debt collector would not be seeking a deficiency

balance from the plaintiffs after a foreclosure. *Hagy*, 882 F.3d at 621. The information contained

in the letter was true—the defendants did not intend to and in fact did not seek payment from the

plaintiffs. *Id.* Thus, the debt collector's letter neither harmed the plaintiffs nor did it create a real

risk of harm. In *Casillas,* the Seventh Circuit found that a plaintiff lacked standing where a debt

collector failed to explain to the plaintiff that certain notifications and requests were required to be

in writing. *Casillas*, 926 F.3d at 332. It reasoned that "[a]ny risk of harm was entirely

counterfactual: she was not at any risk of losing her statutory rights because there was no prospect

that she would have tried to exercise them" because she did not plan to contest the debt. *Id.* at 334.

The court disagrees with this approach to analyzing risk of harm. Risk must be calculated from an

*ex ante* perspective, not based on what later took place. More persuasive is Judge Wood's dissent

from the denial of *en banc* review in that case:

> It is a fair inference from Casillas's complaint that Madison's
> omissions at a minimum put her in imminent risk of losing the many
> protections in the [FDCPA] that are designed to regulate the debt-
> collection process as it goes forward . . . .The Supreme Court
> confirmed in *Spokeo* that intangible harms defined by Congress can
> qualify as injury-in-fact. 136 S.Ct. at 1549. The only type of injury
> it ruled out was "a bare procedural violation, divorced from any
> concrete harm." *Id.* In addition, standing is not limited to cases in
> which the plaintiff already has suffered the harm. It may be "actual
> *or imminent*." *Id.* at 1548, citing Lujan, 504 U.S. at 560 . . .
> (emphasis added). Read in the proper light, Casillas's pleadings put
> forward enough to infer an imminent concrete and particular injury.

*Id.* at 341–42 (Wood, J., dissenting); *accord Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 761 (6th

Cir. 2018) (holding that a plaintiff had standing to assert a violation of the procedures outlined in

§ 1692g because the alleged violation created a risk of harm). Because the court concludes that

Cascade's alleged violations of § 1692g(a) created an appreciable risk of harm, it also concludes that Rodriguez suffered a concrete injury-in-fact sufficient to confer standing.

In short, because the court determines that Rodriguez has standing to assert his FDCPA claims, Cascade's motion to dismiss is denied.

## II.   CASCADE'S MOTION TO STRIKE

Cascade filed a motion that it captioned as "Defendant's Motion to Strike Unpleaded Claims." In this motion, Cascade asserted that Rodriguez pled only a claim that the collection letter violated the FDCPA because it improperly limited the methods by which Rodriguez could contact the company to dispute the debt. Cascade argued that Rodriguez attempted to add two unpled claims to this litigation in his motion for summary judgment. Specifically, a claim that the letter misstated the 30-day deadline to dispute the debt and a claim that the letter failed to definitively state the amount of the debt. Cascade argues that the court should not consider the new, unpled claims that Rodriguez raised in his motion for summary judgment.

The court agrees with Cascade that Rodriguez did not plead his 30-day-deadline claim or his amount-due claim. The only claim raised by the complaint was Rodriguez's assertion that Cascade violated several provisions of the FDCPA by stating in the collection letter that he had to contact the company by mail or by telephone if he wanted to dispute the debt. The complaint did not raise any other issues with the letter. Broad statements in the complaint that the letter violated the FDCPA were not sufficient to notify Cascade of Rodriguez's additional claims raised for the first time in his motion for summary judgment. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) ("[D]espite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." (Citation omitted)).

Thus, the question before the court is whether it should grant Rodriguez leave to add the new 30-day-deadline and amount-due claims to the litigation. "Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted); *accord Lockett v. Fallin*, 841 F.3d 1098, 1109 (10th Cir. 2016). "If the new theory prejudices the other party in maintaining its defense, however, courts will not permit the plaintiff to change her theory." *McBeth*, 598 F.3d at 716. Additionally, a court may deny leave to pursue an unpled theory if it finds "undue delay, bad faith or dilatory motive." *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (citation omitted). A plaintiff is not required to file a formal motion to amend the complaint. A court may permit a plaintiff "to 'constructively' amend the [complaint] by means of [a] summary-judgment motion" so long as the court applies the same standards that apply to a motion to amend. *Id.*

Here, the court deems Rodriguez's motion for summary judgment to be a constructive request to amend the complaint. Moreover, the parties have had an opportunity to brief whether Rodriguez should be allowed to pursue his unpled claims through Cascade's motion to strike. Thus, the court must first determine whether Cascade would be prejudiced by the addition of the new claims.

Cascade has failed to show that it will be prejudiced for two reasons. First, Rodriguez raised the new claims two months before the fact discovery deadline. Cascade had time to conduct additional discovery that it deemed necessary, including the opportunity to seek leave to depose Rodriguez a second time. Cascade also could have requested an extension of time to conduct discovery or hold open discovery pending its motion to strike but did not do so. It cannot runout the discovery clock and claim prejudice after the fact.

Second, Cascade has not adequately shown what useful evidence it could discover. All of Rodriguez's claims are based upon statements made in the collection letter, which both parties had knowledge of from the beginning of the case. Liability for these claims under the FDCPA is not based on whether Rodriguez was confused by the language in the letter. Instead, liability rests on the objective standard of whether a hypothetical consumer would have been misled by the letter. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) ("The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be."). Moreover, Rodriguez is seeking only statutory damages and not actual damages. *See* 15 U.S.C. § 1692k(a) (a plaintiff asserting claims under the FDCPA may seek actual damages, statutory damages, or both). Thus, there is no need for discovery regarding any damages that Rodriguez may have suffered due to the new claims. In short, Cascade has not shown that it would be prejudiced by an inability to conduct additional discovery regarding the unpled claims.

Cascade also has not shown undue delay, bad faith or dilatory motive on the part of Rodriguez in asserting his new claims. Although the deadline to amend the complaint had passed about six weeks before Rodriguez disclosed the new claims in his summary judgment motion, he asserted the claims less than five months after he filed the complaint. Because he asserted the new claims relatively early in the litigation—and while fact discovery was still open—the court finds no undue delay or dilatory motive that would overcome the presumption that a failure to plead a theory will not bar a plaintiff from pursuing the claim.

Therefore, the court denies Cascade's motion to strike Rodriguez's new 30-day-deadline and amount-owed theories.

### III.     CASCADE'S MOTION FOR SUMMARY JUDGMENT

15 U.S.C. § 1692g(a) requires debt collectors to convey certain information to debtors either in the debt collector's initial communication with the debtor or within five days of the initial communication. "[D]ebt collection notices must intelligibly convey the § 1692g(a) requirements." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 593–94 (3d Cir. 2020).

As discussed above, Rodriguez asserts three distinct theories of liability based upon alleged violations of § 1692g in the collection letter. First, Rodriguez argues that Cascade violated § 1692g(a)(3) by informing him that he had thirty days from the date of the letter to dispute the debt, rather than 30 days from receipt of the letter. Second, he contends that Cascade violated § 1692g(a)(3) by limiting the methods that he could use to dispute the debt to a letter or a phone call. Third, Rodriguez asserts that Cascade violated § 1692g(a)(1) by failing to accurately notify him of the amount he owed.

Rodriguez also asserts that each of these three violations of § 1692g also constitute violations of § 1692e, which prohibits "false, deceptive, or misleading" representations in connection with debt collection, and § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."

Cascade argues that it is entitled to summary judgment on Rodriguez's second theory that it had improperly limited the methods by which he could dispute the debt. Cascade also contends that Rodriguez's third theory, that it had not properly informed him of the amount due, fails as a matter of law. Finally, Cascade argues that it is entitled to summary judgment on all of Rodriguez's theories of liability because it has established as a matter of law that it must prevail on the bona fide error affirmative defense.

A.  *The Method-of-Dispute Claim*

Under § 1692g(a)(3), an initial debt collection letter must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." The letter sent by Cascade stated:

> If you dispute the validity of this debt or any part of it, you must notify us either by writing to Cascade Collections LLC, P.O. Box 970547, Orem, UT 84097, or by calling toll-free 855-978-7184 or locally (801) 900-3328 within thirty (30) days of the date of this letter; otherwise we will consider this debt to be valid and proceed accordingly.

Rodriguez argues that § 1692g(a)(3) "allows a consumer to dispute the debts in any manner." ECF No. 31, p. 27. Thus, Rodriguez asserts that the statement in the letter that he had to dispute the debt either through a letter or a phone call violated § 1692g(a)(3) because Cascade limited the methods that he could use to dispute the debt.

Cascade argues that the court should grant summary judgment in its favor because the FDCPA does not prohibit him from listing a mailing address and two phone numbers as the available means for disputing the debt. The court agrees. Nothing in the text of § 1692g(a)(3) requires a debt collector to make available every conceivable means of communicating the debtor's desire to dispute a debt. The statute states only that the debt collector must notify the debtor that he or she has 30 days from receipt of the collection letter to dispute the validity of the debt. This provision does not say anything about the means of disputing the debt.

Rodriguez does not articulate a textual argument for his assertion that debt collectors may not place any limits on the manner of communicating a dispute. Instead, Rodriguez relies on *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078 (9th Cir. 2005). In that case, a debt collector stated

that the debtor had to give notice of any dispute regarding the debt in writing. *Id*. at 1079. The Ninth Circuit held that this collection letter violated the FDCPA because, although § 1692g(a)(4) and (5) require a written dispute to be effective, §1692(a)(3) does not state that a dispute must be in writing. *Id*. at 1082. *Camacho* does not apply here, however, because Cascade did not state in its collection letter that any dispute had to be in writing. Indeed, one of the methods of disputing the debt was over the phone. *Camacho* does not hold that *no* limitations can ever be placed on the means of communication.

Indeed, the rule proposed by Rodriguez would place either the debtor or the debt collector in an untenable position. The debt collector could notify the debtor of the 30-day deadline and leave it up to the consumer to figure out how to communicate a dispute, prejudicing the consumer. Or, as here, the debt collector could list methods of communicating a dispute. But under Rodriguez's gloss on § 1692g(a)(3), if the consumer could conceive of any other method of contacting the debt collector—whether by fax, ham radio, a Facebook message, Twitter, or any other social media platform—the debt collector would be liable for violating the FDCPA. No case supports Rodriguez's reading of § 1692g(a)(3).

In short, the collection letter does not violate § 1692g(3)(a) by listing two reasonable methods of disputing Rodriguez's debt. And because Rodriguez's theories of liability under § 1692e and § 1692f are based on his § 1692g claim, he has not articulated any viable theory of recovery under these provisions either. Thus, Cascade is entitled to summary judgment in its favor on Rodriguez's method-of-dispute claim.

B.    *The Amount-Due Claim*

An initial communication with a debtor must contain a statement of "the amount of the debt." 15 U.S.C. § 1692g(a)(1). The heading of the collection letter at issue here listed the "Amount

Due" as "$19,138.39." The letter went on to state: "Please note that the Amount Due is the balance as of the date listed above and may or may not include interest, accruing interest, costs, or other fees. Please contact this office to determine how the Amount Due is calculated and to determine the balance."

Rodriguez argues that Cascade failed to state the amount of the debt because the figure listed at the top of the letter may or may not be the full amount of the debt as of the date of the letter. That amount listed in the letter could have omitted  interest, costs, or other fees that were due at that time. Cascade argues that the court should grant summary judgment in its favor because the collection letter accurately stated the amount due as of the date of the letter. The court disagrees with Cascade because the letter is ambiguous.

"Although the text of § 1692g does not explicitly provide that the disclosures required by it must be made in a non-confusing manner, courts have held that the statute implies that the required disclosures be set forth in a form and within a context that does not distort or obfuscate [their] meaning." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002). "When determining whether a debt collector has violated § 1692g's notice requirements, [courts] consider how the 'least sophisticated consumer' would interpret the notice. [Courts] ask whether 'the notice fails to convey the required information "clearly and effectively and thereby makes the least sophisticated consumer uncertain" as to the meaning of the message.'" *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017) (citations omitted); *see also Fouts v. Express Recovery Servs., Inc.*, 602 F. App'x 417, 421 (10th Cir. 2015) (unpublished) (applying the "least sophisticated consumer"

standard to a FDCPA claim); *Ferree v. Marianos*, 129 F.3d 130 at *1 (10th Cir. 1997) (unpublished table decision) (same).[2]

Here, the collection letter has two plausible interpretations. Cascade asserts that the amount due listed at the top of the letter is the full amount that was owed as of the date of the letter. It argues that the statement in the letter that the amount due "may or may not include interest, accruing interest, costs, or other fees" means that the amount listed may or may not include interest or other fees. But either way, Cascade contends that Rodriguez did not owe more than the amount listed in the letter. *See Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (as long as a collection letter accurately states the full amount due, the letter does not violate the FDCPA if it mischaracterizes the amount as a "principal balance").

However, there is another equally, if not more, plausible interpretation of the letter. The statement that the amount due "may or may not include interest, accruing interest, costs, or other fees" could be read to mean that there is a possibility that additional amounts for interest and fees could be owed *in addition to* the amount listed in the letter. The letter's directive to "[p]lease contact this office to determine how the Amount Due is calculated and to determine the balance" further supports the inference that the true amount owed could only be ascertained by contacting Cascade for further information. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (The FDCPA "requires statement of the debt. The requirement is not satisfied by listing a phone number.").

---

[2] Although there is no explicit reference to a least-sophisticated-consumer standard in the FDCPA, many circuit courts have adopted it—and apparently none have rejected it. Although the court is unaware of any published Tenth Circuit opinions embracing this standard, at least two unpublished opinions have. In this case, both parties agree that the least-sophisticated-consumer standard is the applicable rule. Accordingly, the court applies that standard here.

The court concludes that even the most sophisticated consumer could not be sure which of these two interpretations is correct. Because one of the possible readings does not convey the total amount owed as of the date the communication was sent, the letter does not satisfy the minimum requirement of § 1692g(a)(1). *See id.* at 875–76 (the FDCPA requires a debt collector to "state the total amount due—interest and other charges as well as principal—on the date the . . . letter was sent."). Thus, Rodriguez, and not Cascade, prevails as a matter of law on the amount-due claim. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (where a collection letter was susceptible to two interpretations, one of which contradicted § 1692g, the debt collector violated this provision of the FDCPA as a matter of law). Accordingly, the court denies Cascade's request for summary judgment in its favor on this claim.

C.       *Bona Fide Error Affirmative Defense*

Finally, Cascade argues that it is entitled to summary judgment on all of Rodriguez's claims because he should prevail as a matter of law on his bona fide error affirmative defense. The FDCPA provides: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Thus, a defendant can avoid liability for a violation of the FDCPA if it can prove "that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite 'the maintenance of procedures reasonably adapted to avoid' the violation." *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002). The bona fide error defense, however, will not excuse a mistake of law as to the requirements of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010).

Cascade argues that it is entitled to summary judgment on its bone fide error defense. Because Cascade bears the burden of proof, it must show that there is no dispute of material fact as to each element of this defense in order to prevail on summary judgment. The court concludes that Cascade is not entitled to summary judgment in its favor because there are disputes of material fact as to whether it maintained reasonable procedures to avoid violations of the FDCPA. Cascade submitted a declaration outlining its procedures for ensuring compliance with the FDCPA. Rodriguez pointed to the deposition testimony of Cascade's Rule 30(b)(6) witness and its office manager, calling into question which procedures Cascade actually employed. This presents a question of fact to be resolved at trial. Moreover, the ultimate question of whether the procedures used were reasonably adapted to avoid a violation is a mixed question of law and fact for the jury.

Accordingly, Cascade is not entitled to summary judgment in its favor on its bona fide error affirmative defense.

## IV. RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT

Rodriguez also filed a motion for summary judgment, arguing that he should prevail as a matter of law on his three theories of liability. In his reply brief, Rodriguez also argued that he is entitled to summary judgment on Cascade's bona fide error affirmative defense.

### A. The 30-Day-Deadline Claim

#### 1) § 1692g

Under 15 U.S.C. § 1692g(a)(3), a debt collector must inform the consumer that he or she has 30 days "after receipt of the notice" to dispute the validity of the debt. Two sentences in the collection letter sent by Cascade correctly stated that Rodriguez had 30 days from receipt of the letter to dispute the debt. But the letter also stated: "If you dispute the validity of this debt or any part of it, you must notify us . . . within thirty (30) days of the date of this letter." Rodriguez argues

that the letter violates § 1692g(a)(3) because this contradictory language would confuse the least sophisticated consumer. Cascade does not respond to this argument.

The court agrees that Rodriguez prevails as a matter of law on this claim. The letter indisputably contained an inaccurate statement that Rodriguez had 30 days from the date of the letter, rather than the date of receipt, to dispute the debt. A debt collector must convey the § 1692g disclosures in a manner that "does not distort or obfuscate its meaning." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002). The internal contradiction in the letter as to the proper deadline to dispute the debt violates § 1692g(a)(3) because it would confuse the least sophisticated consumer. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (where a collection letter was susceptible to two interpretations, one of which contradicted § 1692g, the debt collector violated this provision of the FDCPA as a matter of law).

2)      § 1692e

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Rodriguez argues that he prevails as a matter of law on his claim that Cascade's misstatement regarding the 30-day deadline violates this provision of the FDCPA. The court agrees.

"A communication is deceptive for purposes of [§ 1692e] if 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (citation omitted); *accord Kistner v. L. Offs. of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008) ("[C]ollection notices can be deceptive [under § 1692e] if they are open to more than one reasonable interpretation, at least one of which is inaccurate." (citation omitted)). Because of the conflicting statements in the collection letter as to when the 30-day period to dispute the debt began to run, the letter was subject to two

reasonable interpretations. Thus, the letter was deceptive within the meaning of § 1692e. Moreover, the statement that the 30-day period started on the date printed on the letter was false and misleading. And because this statement was made in a collection letter, the representation was made "in connection with the collection of any debt." *See* 15 U.S.C. § 1692e. Accordingly, Rodriguez has established the elements of a § 1692e claim as a matter of law.

       3)       § 1692f

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. Rodriguez asserts that he should prevail as a matter of law on his claim that the erroneous statement that he had 30-days form the date of the letter to dispute the debt violated § 1692f. The court disagrees. Whether this misstatement is "unfair or unconscionable" is a mixed question of law and fact that must be resolved at trial. *See Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1321 (D. Utah 2019) (denying a plaintiff's motion for summary judgment on a § 1692f claim). Moreover, unlike § 1692e, which requires only that the misleading representation be made "in connection with the collection of any debt," § 1692f requires a plaintiff to prove that the unfair or unconscionable means was used "to collect or attempt to collect any debt." Rodriguez has not shown that Cascade used the misstatement regarding the 30-day deadline to collect a debt from him.

Accordingly, the court denies Rodriguez's motion for summary judgment on his § 1692f claim.

    B.    *The Method-of-Dispute Claim*

As discussed above, Cascade is entitled to summary judgment on Rodriguez's claim that it violated § 1692g, § 1692e, and § 1692f by limiting the methods of disputing the debt. Therefore, the court denies Rodriguez's motion for summary judgement as to these claims.

23

C.     *The Amount-Due Claim*

1)   § 1692g

In Part III.B above, the court explained that the collection letter was ambiguous as to whether the amount due listed in the letter could be augmented by interest and fees. Because of this ambiguity, the court determined that Rodriguez prevails as a matter of law on his claim that the amount-due portion of the letter violated § 1692g.

2)     § 1692e

Rodriguez has also shown that he prevails on his claim that the amount-due portion of the letter violated § 1692e's prohibition against "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." "A communication is deceptive for purposes of [§ 1692e] if 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Campuzano-Burgos*, 550 F.3d at 298 (citation omitted); *accord Kistner*, 518 F.3d at 441. Because the court concludes that the letter was ambiguous as to the amount due, and because one of the possible interpretations violates § 1692g(a)(1), Rodriguez has established the elements of his § 1692e claim as a matter of law.

3)     § 1692f

The court denies summary judgment on Rodriguez's claim that the amount-due portion of the collection letter violated the prohibition against "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Whether the ambiguous nature of the letter is "unfair or unconscionable" is a mixed question of law and fact that must be resolved at trial. *See Sexton*, 372 F. Supp. 3d at 132 (denying a plaintiff's motion for summary judgment on a § 1692f claim).

D.       *The Bona Fide Error Affirmative Defense*

Rodriguez did not mention Cascade's bona fide error affirmative defense in its opening brief. He raised his argument for summary judgment on this affirmative defense for the first time in his reply brief.  "[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (alteration in original) (citation omitted). The waiver rule is particularly appropriate when applied to motions for summary judgment because the nonmoving party is deprived of an opportunity to cite evidence creating a dispute of material fact. *See Ramos v. State Farm Mut. Ins. Co.*, No. 19-CV-01634-KMT, 2020 WL 6134901, at *10 (D. Colo. Oct. 19, 2020) (applying the waiver rule in the context of a motion for summary judgment). Thus, Rodriguez waived his argument for summary judgment on Cascade's bona fide error defense.

E.       *Conclusion*

As discussed above, Rodriguez prevails as a matter of law on his 30-day-deadline claim under § 1692g and § 1692e. Rodriguez also prevails as a matter of law on his amount-due claim under § 1692g and § 1692e. But Rodriguez is not entitled to summary judgment on Cascade's bona fide error affirmative defense. Because this affirmative defense remains to be resolved at trial, Rodriguez has not definitively proven liability as to any of his claims. Accordingly, the court denies his motion for summary judgment.

## V.     RODRIGUEZ'S MOTION FOR CLASS CERTIFICATION

Finally, Rodriguez moves for certification of a class that would include individuals who received substantially similar collection letters from Cascade from February 21, 2019 to February 21, 2020. In order to certify a class action lawsuit, all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied. The court must also determine that the proposed

class representative has satisfied the requirements for one of the three categories listed in Rule 23(b).

### A.   Rule 23(a)

#### 1)   Numerosity

The court must first determine whether the proposed class "is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Rodriguez represents that during the proposed class period, 188 individuals received collection letters similar to the one Cascade sent to him. Cascade does not dispute Rodriguez's contention that joinder of all of these individuals is impracticable. Accordingly, the court finds that this condition has been satisfied.

#### 2)   Commonality

Additionally, the court must find that "there are questions of law or fact common to the class." *Id.* at 23(a)(2). To satisfy this commonality requirement, the proposed class representative must show that the class members can assert a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, the commonality requirement is met because the questions common to all class members are whether identical or similar language found in the form letters violates the FDCPA and whether Cascade can establish a bone fide error defense for including the language in the letters. *See Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 543 (N.D. Cal. 2005) ("Class actions are generally appropriate where standardized documents are at issue.").

#### 3)   Typicality

Next, the proposed class representative must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).

"[T]he typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class. [Courts] do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Because, as discussed above regarding commonality, all class members assert liability based on identical or similar language in a form letter, Rodriguez's claims are typical of the claims of other proposed class members.

Cascade argues in passing that Rodriguez's claims are not typical of the claims of other proposed class members because it obtained judgments or settled claims against some of the proposed class members. Cascade asserts, without explanation, that these judgments or settlements can be asserted against these individuals. But liability for the underlying debt bears no relation to the issue of whether the collection letter violated the FDCPA. *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."). And Cascade provides no reasoning or proof for the proposition that any settlement agreements could affect liability for violations of the FDCPA.

Therefore, the typicality requirement has been satisfied.

4)       Adequacy of Representation

The proposed class representative must show that he or she "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted).

Cascade argues that Rodriguez and his lawyers will not adequately represent the interests of the class. First, Cascade argues that Rodriguez is not an adequate class representative because he pled guilty to a felony involving dishonest conduct almost 10 years ago. Cascade asserts that Rodriguez will not adequately represent the class because he will have "credibility problems." *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems . . . may not be an adequate class representative."). But liability in this action is based solely on the application of an objective, least-sophisticated-consumer test to the language of the collection letter. Rodriguez's credibility is not at issue in this litigation. *See id*. at 728 ("For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims.").

Cascade also argues that Rodriguez cannot be trusted to represent the other class member's interests because of his felony conviction. But the court finds that a ten-year-old plea deal, although concerning, does not render him an inadequate class representative. See *Scuderi v. Mammoth Energy Servs., Inc.*, No. CIV-19-522-SLP, 2019 WL 4397340, at *5 (W.D. Okla. Sept. 13, 2019) (noting that many courts "have found an individual to be an adequate class representative notwithstanding a criminal history where, as here, the charges have no direct relationship to the issues in the case for which appointment is sought"); *Dvornikov v. Landry's Inc.*, No. 15-CV-13286-ADB, 2017 WL 1217110, at *10 (D. Mass. Mar. 31, 2017) ("Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated

unsavory, unethical, or even illegal conduct." (quoting 1 NEWBERG ON CLASS ACTIONS § 3:68 (5th ed.)).

In addition, Cascade asserts that Rodriguez should not be a class representative because of his many bankruptcy filings. In the past decade, he has filed for bankruptcy ten times. Nine of the bankruptcy petitions were dismissed after Rodriguez failed to pay filing fees or Chapter 13 plan payments. But it is unsurprising that a plaintiff making a claim under the FDCPA would have bankruptcy problems. Cascade does not explain how these prior bankruptcies would prevent Rodriguez from vigorously prosecuting an action on behalf of the class.

Next, Cascade contends that Rodriguez's counsel is inadequate. Cascade quibbles with opposing counsel's failure to request leave to file an overlength brief, counsel's use of the wrong caption on a declaration, and other relatively minor peccadillos. None of these arguments convinces the court that plaintiff's counsel cannot adequately represent the class.

B.    *Ascertainability*

Most circuits have inferred an additional requirement for class certification: the class must be ascertainable. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (collecting cases). But the circuits are split on how stringent the ascertainability requirement should be. The rule articulated by the Third Circuit in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) is among the most restrictive. Under *Carrera*, a plaintiff must show that (1) the proposed class is "currently and readily ascertainable based on objective criteria," *id.* at 306 (citation omitted), and (2) the "class members can be identified 'without extensive and individualized fact-finding or "mini-trials,"' a determination which must be made at the class certification stage," *id.* at 307 (citation omitted). The first part of the *Carrera* test is known as the "objective criteria" prong while the second part is referred to as the "administrative feasibility" prong. The Fourth

Circuit has adopted a rule similar to that of the Third Circuit. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

Recently, the Second, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have rejected the approach in *Carrera* as overly burdensome and because it is untethered to the text of Rule 23. *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015); *Sandusky Wellness Ctr.*, 821 F.3d at 996; *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). These courts have rejected the administrative feasibility prong articulated in *Carrera*. Instead, they have held that the ascertainability requirement is met so long as the plaintiff can show that the class is ascertainable based on objective criteria. *See In re Petrobras Sec.*, 862 F.3d at 264.

The parties have not cited a Tenth Circuit opinion discussing ascertainability, and the court has not discovered any mandatory authority through its own research. In the absence of binding authority, the court concludes that the test adopted by the Second, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits to be the better approach. In particular, the court is persuaded that the administrative feasibility prong adopted by the Third and Fourth Circuits has no basis in the text of Rule 23. See *Cherry*, 986 F.3d at 1303 ("Administrative feasibility does not follow from the text of Rule 23(a). . . . Nor does a requirement of administrative feasibility follow from Rule 23(b)."); *Mullins*, 795 F.3d at 658 ("Nothing in Rule 23 mentions or implies this heightened [administrative feasibility] requirement . . . .").

Accordingly, the court need only examine whether the class proposed by Rodriguez is capable of definition through objective criteria in order to determine whether the ascertainability requirement has been met. Under this test, the class proposed by Rodriguez is readily ascertainable.

The proposed class would consist of individuals who received form letters from Cascade during the class period that contained language that was substantially similar to the text of the letter received by Rodriguez. Cascade has in its records the 188 substantially similar letters that it mailed within the class period. Rodriguez need only conduct discovery to determine the identity of the recipients of the letters.

Cascade argues that the class is not ascertainable because it is possible that some of the collection letters might not have been attempts to collect a "consumer debt"—a prerequisite for liability under the FDCPA and for membership in the proposed class. Cascade asserts that individual inquiries into whether it was attempting to collect a consumer debt for each letter would be so cumbersome that the class is not ascertainable. But this is an administrative feasibility argument. As discussed above, proving the practicability of identifying members of the class that may share in any recovery is not required at the class certification stage.

Moreover, even if the court were to apply the administrative feasibility prong adopted by the Third and Fourth Circuits, Rodriguez has shown that it is possible to expeditiously and economically define the class. All of the debts Cascade attempted to collect were for vehicles purchased from a dealership called Cars Now. The parties could email surveys to class members or use other claims process tools to determine whether any of the vehicles were purchased for business, rather than personal, purposes. *Cf. Mullins*, 795 F.3d at 667 (reasoning that claim administration processes could be used to weed out individuals not entitled to recovery).

In short, Rodriguez has satisfied the ascertainability requirement for class certification.

C.      *Rule 23(b)*

Although a proposed class representative need only satisfy the requirements for one of the three types of class action lawsuits listed in Rule 23(b), Rodriguez argues that he can pursue a class

action under two of the three categories. The court first addresses Rodriguez's Rule 23(b)(3) argument. The court then turns to his Rule 23(b)(2) argument.

    1) Rule 23(b)(3)

The Rule 23(b) requirement can be satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Cascade argues that a class action lawsuit is not a superior method of resolving the dispute regarding its collection letters. It points to the fact that the FDCPA allows successful plaintiffs to recover their attorney fees and costs. 15 U.S.C. § 1692k(a)(3). Cascade asserts that this attorney fee provision solves the problem of structural impediments to lawsuits for relatively small amounts due to the high costs of litigation. And because this structural impediment to individual lawsuits is often cited as a reason that class action lawsuits are superior to individual claims, Cascade contends that a class action lawsuit is not the better option here.

But mitigating the structural impediment of high litigation costs is not the only possible reason for the superiority of class actions over individual lawsuits. The court also considers the burden to the judicial system associated with adjudicating 188 individual lawsuits. Moreover, because liability for each potential class member turns on nearly identical language found in a form letter, the common questions of law and fact in this case heavily predominate over questions affecting only individual members. Because the claims of 188 individuals may be resolved in one stroke, the court finds that a class action lawsuit is superior to other available methods of adjudicating the controversy at issue here. Thus, Rodriguez has satisfied the requirements of Rule 23(b)(3)

2)      Rule 23(b)(2)

Rodriguez also seeks certification of a class action lawsuit under Rule 23(b)(2), which provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Rodriguez argues that a class action for declaratory relief and injunctive relief is appropriate in this case because these forms of equitable relief can be applied to the class as a whole.

The court, however, finds that Rule 23(b)(2) is inapplicable here because the proposed class cannot obtain declaratory or injunctive relief. The FDCPA explicitly states that the forms of relief available in a private lawsuit are: (1) actual damages, (2) statutory damages, and (3) attorney fees and costs. 15 U.S.C. § 1692k(a). Thus, there is no private right of action for equitable relief under the FDCPA. *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004) ("[W]e hold injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA."); *Morrison v. Clear Mgmt. Sols.*, No. 1:17-CV-51, 2019 WL 122905, at *3 (D. Utah Jan. 7, 2019) ("[T]he FDCPA does not make equitable relief available as a remedy to private litigants."); *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 3523696, at *9 (N.D. Cal. June 4, 2015) ("[E]very circuit court that has considered this question has concluded that private litigants may seek damages but not injunctive and declaratory relief under the FDCPA."). Because the proposed class cannot obtain declaratory or injunctive relief, the court may not certify a class action under Rule 23(b)(2). *See Jacobson*, 2015 WL 3523696, at *10 (denying Rule 23(b)(2) certification for claims brought under the FDCPA).

D. *Conclusion*

The court finds that the Rodriguez has met the requirements of Rule 23(a) and Rule 23(b)(3) for certifying a class action lawsuit and appoints him as the class representative. But the court denies certification under Rule 23(b)(2). The court will enter a separate class certification order.

## CONCLUSION

For the reasons stated above, the court rules as follows:

(1) The court DENIES Cascade's motion to dismiss. ECF No. 22.

(2) The court DENIES Cascade's motion to strike. ECF no. 21.

(3) The court GRANTS IN PART and DENIES IN PART Cascade's motion for summary judgment. ECF No. 22. The court grants summary judgment in favor of Cascade on all of Rodriguez's method-of-dispute claims under § 1692g, § 1692e, and § 1692f. The court denies summary judgment in favor of Cascade on all other claims and for the bone fide error affirmative defense.

(4) The court DENIES Rodriguez's motion for summary judgment. ECF No. 17. The court concludes that Rodriguez has proven his 30-day-deadline claim under § 1692g and § 1692e. Rodriguez has also established his amount-due claim under § 1692g and § 1692e. But the court denies summary judgment in favor of Rodriguez because the issue of whether Cascade can prove a bone fide error affirmative defense remains for resolution at trial.

(5) The court GRANTS IN PART AND DENIES IN PART Rodriguez's motion for class certification. ECF No. 16. The court grants certification of a class under Rule 23(b)(3).

The court denies certification of a class under Rule 23(b)(2). The court will enter a separate class certification order.

DATED March 31, 2021.

BY THE COURT

Jill N. Parrish
United States District Court Judge

35